## REDFIELD *v.* PARKS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 27. Submitted November 5, 1889. — Decided November 18, 1889.

In the courts of the United States an action of ejectment is an action at law, and the plaintiff must recover on the legal title.

While the title to public land is still in the United States, no adverse possession of it can, under a state statute of limitations, confer a title which will prevail in an action of ejectment in the courts of the United States, against the legal title under a patent from the United States.

A deed of land sold for non-payment of taxes, which recites that the sale was made on a day which was not the day authorized by law, is void on its face, and is not admissible in evidence to support an adverse possession under a statute of limitations.

THIS cause was submitted April 15, 1889, at the last term, the briefs of counsel for both parties having been filed in due course with the clerk of this court. The court there-

upon refused to consider the case on its merits for the reason that the record did not contain copies of the pleadings, and leave was granted to the plaintiff in error to sue out a writ of certiorari to bring into this court the papers omitted from the transcript. *Redfield* v. *Parks*, 130 U. S. 623. Such certiorari was then sued out, and return thereto duly made. The case made by the original record and the papers brought up on return to the certiorari is stated in the opinion of the court.

On the 15th of October of the present term the counsel for the plaintiff in error moved for leave to file an additional brief, and for leave to have an oral argument when the cause should be reached on the docket. The court on October 16th granted the counsel on both sides leave to file additional briefs, but denied the motion as to oral arguments.

*Mr. John F. Dillon* thereupon, on the 16th of October, filed an additional brief on behalf of the plaintiff in error, citing: *Sutton* v. *Stone*, 4 Nebraska, 319 ; *Trustees of Kentucky Seminary* v. *Payne*, 3 T. B. Mon. 161 ; *Toll* v. *Wright*, 37 Michigan, 93, 100 ; *Moore* v. *Brown*, 11 How. 414 ; *Walker* v. *Turner*, 9 Wheat. 541 ; *Waterson* v. *Devoe*, 18 Kansas, 223 ; *Skyles* v. *King*, 2 A. K. Marsh. (Ky.) 385 ; *Cutler* v. *Hurlbut*, 29 Wisconsin, 152 ; *Mason* v. *Crowder*, 85 Missouri, 526 ; *Sheehy* v. *Hinds*, 27 Minnesota, 259 ; *Gomer* v. *Chaffee*, 6 Colorado, 314 ; *Wofford* v. *McKinna*, 23 Texas, 36 ; *S. C.* 76 Am. Dec. 53 ; *Lindsey* v. *Miller*, 6 Pet. 666 ; *Bagnell* v. *Broderick*, 13 Pet. 436 ; *Gibson* v. *Chouteau*, 13 Wall. 92 ; *Wilcox* v. *Jackson*, 13 Pet. 498 ; *Oaksmith* v. *Johnston*, 92 U. S. 343 ; *Thompson* v. *Prince*, 67 Illinois, 281 ; *Wood* v. *Ferguson's Lessee*, 7 Ohio St. 288 ; *Clark* v. *Southard*, 16 Ohio St. 408 ; *Miller* v. *Dunn*, 62 Missouri, 216 ; *Dunn* v. *Miller*, 75 Missouri, 260, 272 ; *Cline's Heirs* v. *Catron*, 22 Gratt. 378, 392 ; *Iverson* v. *Dubose*, 27 Alabama, 418 ; *Chiles* v. *Calk*, 4 Bibb (Ky.) 554 ; *Clements* v. *Anderson*, 46 Mississippi, 581 ; *Gardiner* v. *Miller*, 47 California, 570 ; *De Miranda* v. *Toomey*, 51 California, 165.

*Mr. A. H. Garland, Mr. A. G. Safford* and *Mr. D. W. Jones* on the 4th November, 1889, on behalf of the defend-

ants in error, filed an additional brief, in reply to *Mr. Dillon's* additional brief, reviewing the cases cited in it, and further citing : *Daniel* v. *Lefevre*, 19 Arkansas, 201 ; *Fleming* v. *Johnson*, 26 Arkansas, 421 ; *Percifull* v. *Platt*, 36 Arkansas, 456 ; *McCool* v. *Smith*, 1 Black, 459 ; *Litchfield* v. *Railroad Co.*, 7 Wall. 270 ; *Sicard* v. *Davis*, 6 Pet. 124 ; *Wilkes* v. *Elliot*, 5 Cranch C. Ct. 611 ; *Lagow* v. *Neilson*, 10 Indiana, 183 ; *Cutter* v. *Hurlbut,.* 29 Wisconsin, 152 ; *Lindsay* v. *Fay*, 25 Wisconsin, 460 ; *Mason* v. *Crowder*, 85 Missouri, 526 ; *Pillow* v. *Roberts*, 13 How.. 472.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the. United States for the Eastern District of Arkansas. The action in that court was in the nature of ejectment to recover possession of real estate, brought by Jared E. Redfield, the present plaintiff in error, against William P. Parks, Charles Harper and others. The case was submitted to the court without a jury, which made a finding of facts on which was rendered a judgment for the defendants.

The principal issue in the case before that court was on the defence under the statute of limitations. The plaintiff relied upon, and introduced in evidence, a patent from the United States, dated April 15, 1875, conveying the property to the Mississippi, Ouachita and Red River Railroad Company, reciting the purchase by that company of the land in controversy and the payment of $594.48 for it.

The plaintiff Redfield purchased this land at a judicial sale, on a judgment against that company, for the sum of five hundred dollars, and received a deed under that purchase. It further appears from the findings of the court that the railroad company made payment in full for the land September 10, 1856, and received at that time the certificate of the register of the land office. The approval of this entry for the issue of a patent was made at the General Land Office in Washington, June 1, 1874. The circumstances under which the delay in the issue of a patent was had are not stated.

The defendants relied upon a deed made by the county clerk of Lafayette County, Arkansas, to W. P. Parks and James M. Montgomery, on the 11th day of August, 1871, upon a sale for taxes for the year 1868, and upon adverse possession under the statute of Arkansas of two years in regard to claims under tax sales, and the general statute of limitation of seven years.

This action was commenced by the plaintiff on the 11th day of April, 1882. The court announced the following conclusions of law :

" 1st. That said tax deed to Parks and Montgomery for said land is void, because the land was sold for the taxes of 1868 on a day not authorized by law.

" 2d. That under the laws of this State, notwithstanding said tax deed is void upon its face, for the reason stated, it constitutes a claim and color of title sufficient to put in motion the statute of limitations in favor of any person in possession under it.

" 3d. That the possession taken by Parks and Montgomery of said land under said tax deed, in the manner set out in the finding of facts, constitutes in law actual, peaceable, open, notorious and adverse possession of the whole of said land; and said possession of said land having been taken by Parks and Montgomery as early as the month of February, 1874, and maintained continuously by them and their grantees down to the trial of this cause, the plaintiff's right of action to recover said land is barred by the two years' statute of limitation contained in section 4475 of Mansfield's Digest, and also by the seven years' statute of limitation contained in section 4471 of the same digest."

Among the requests asked by the plaintiff and refused by the court were the following declarations of law :

" 6th. The plaintiff's title to the lands in this case, and that of those under whom he claims, dates from the issuance of the patent of the United States to the Mississippi, Ouachita and Red River Railroad Company, on the 15th day of April, 1875, and the statute did not commence running in behalf of the defendants, or any of them, until such patent was issued.

" 8th. That no adverse possession of land can be acquired

while the title is still in the United States government, and that the patent issued on the 15th day of April, 1875, did not relate back, so as to make the possession of the defendants adverse prior to the date of the patent.

"9th. That neither the plaintiff, nor the railroad company under which he claims, could have maintained a suit of ejectment in the courts of the United States for the possession of the land described in his complaint on an equitable title, nor until the legal title had passed out of the government on the 15th April, 1875, and this action did not accrue to them until the date of the patent.

"10th. That this suit, having been commenced on the 11th day of April, 1882, within seven years from the date of the patent, the plaintiff's cause of action was not barred by the statute of limitations.

"11th. That the deed of V. V. Smith, clerk, not being a sheriff's deed or an auditor's deed, or a deed commonly called a donation deed, is not within the terms of the two years' statute pleaded by defendants, (§ 4117, Gantt's Digest,) and this action is not barred by that statute."

These rulings upon the law of the case by the court present two distinct propositions, on which error is assigned here. One of these is that which holds the seven-year statute of limitations, which is the general period of limitation, prescribed for the benefit of adverse possession, to be a good defence in this case. The other is the same holding in regard to the two years' limitation law.

It is apparent from the finding of the facts that the action, which was commenced on the 11th day of April, 1882, was within the seven years allowed by the statute from the time that the cause of action accrued, if that is to be computed from the 15th day of April, 1875, the date of the patent introduced by plaintiff. That such is the law in regard to the action of ejectment in the courts of the United States has been repeatedly decided. The foundation of this rule is the proposition that time does not run against the government, that no statute of limitation affects the rights of the government, unless there is an express provision to that effect in the statute, and even

then it cannot be conceded that state legislation can in this manner imperil the rights of the United States or overcome the general principle that it is not amenable to the statute of limitations or the doctrine of laches. The facts found in the present case leave it beyond question that the legal title to the property in controversy was in the United States until the issuing of the patent to the railroad company.

In the courts of the United States, where the distinction between actions at law and suits in equity has always been maintained, the action of ejectment is an action at law, and the plaintiff must recover on the legal title. If it be shown that the plaintiff has not the legal title, that the legal title at the time of the commencement of the action or at its trial is in some other party, the plaintiff cannot recover. The facts in the present case show that this title to the land in controversy was in the United States until the 15th day of April, 1875. Up to that time the statute of limitations could not begin to run in bar of any action dependent on this title. The plaintiff could not sue or recover in the courts of the United States upon the equitable title evinced by his certificate of purchase made by the register of the land office. His title, therefore, being derived from the United States, the right of action at law to oust the defendant did not commence until the making of that patent.

In the case of *Lindsey* v. *Miller's Lessee*, 6 Pet. 666, the defendants relied upon a patent issued by the Commonwealth of Virginia, dated March, 1789, under the survey and entry made in January, 1783, and duly recorded in that year. They then proved possession for upwards of thirty years. The plaintiff introduced a patent from the United States, in which was the legal title, dated December 1, 1824, thirty-five years after the patent issued by the Commonwealth of Virginia. The action was brought in 1832.

This court, in regard to the issue thus made, expressed itself in the following terms (p. 673):

"That the possession of the defendants does not bar the plaintiff's action, is a point too clear to admit of much controversy. It is a well-settled principle that the statute of

limitations does not run against a State. If a contrary rule were sanctioned, it would only be necessary for intruders upon the public lands to maintain their possessions, until the statute of limitations shall run; and then they would become invested with the title against the government, and all persons claiming under it. In this way the public domain would soon be appropriated by adventurers. Indeed, it would be utterly impracticable, by the use of any power within the reach of the government, to prevent this result. It is only necessary, therefore, to state the case in order to show the wisdom and propriety of the rule that the statute never operates against the government. The title under which the plaintiff in the eject-ment claimed emanated from the government in 1824. Until this time there was no title adverse to the claim of the defend-ants; there can, therefore, be no bar to the plaintiff's action."

The case of *Bagnell* v. *Broderick*, 13 Pet. 436, which has been a leading case in this court for many years, was an action of ejectment in which a patent from the United States to John Robertson, Jr., was relied on by the plaintiff as being the origin of his title. The defendants relied upon certain pro-ceedings in the United States land office in Missouri by which the property was deemed to have been appropriated under the act of Congress concerning New Madrid lands which had been lost by the earthquake, and had been certified to Robertson, and a deed from Robertson to the parties under whom de-fendants claimed. But this court held that the patent of the United States, issued long afterwards to Robertson, was the strictly legal title on which plaintiff was bound to recover, and in making the decision the following language is used:

"But suppose the plat and certificate of location had been made and returned to the recorder in the name of Morgan Byrne; and that it had been set up as the better title in opposition to the patent adduced on behalf of the plaintiff in ejectment; still, we are of opinion the patent would have been the better legal title. We are bound to presume, for the pur-poses of this action, that all previous steps had been taken by John Robertson, Jr., to entitle himself to the patent, and that he had the superior right to obtain it, notwithstanding the

claim set up by Byrne; and having obtained the patent, Robertson had the best title (to wit, the fee) known to a court of law.   Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title ; until its issuance, the fee is in the government, which, by the patent, passes to the grantee, and he is entitled to recover the possession in ejectment."

Perhaps the case which presents the whole of this question in the strongest light is that of *Gibson* v. *Chouteau,* 13 Wall. 92. That was a writ of.error from this court to the Supreme Court of Missouri, and that court had held that, under the statutes of that State by which an action of ejectment could be sustained upon an equitable right only, the bar of the statute of limitations began to run when the right of action under such equitable title accrued.   The case was several times before the Supreme Court of that State, which finally decided in favor of the defendants on the plea of the statute of limitations, although the patent under which plaintiff claimed to recover had been issued within the ten years which that statute allowed.   In delivering its opinion that court used the following language :

"But there is another principle upon which we think the statute may be made to operate here as a bar to the plaintiff's action, and that is the fiction of relation whereby the legal title is to be considered as passing out of the United States through the patent at its date, but as instantly dropping back in time to the date of the location as the first act of inception of the conveyance, to vest the title in.the owner of the equity as of that date, and, make it pass from him to the patentee named through all the intermediate conveyances, and so that the two rights of entry and the two causes of action are thus by relation merged in one, and the statute may be held to have operated on both at once.   The legal title, on making this circuit, necessarily runs around the period of the statute bar, and the action founded on this new right is met by the statute on its way and cut off with that which existed before." 39 Missouri, 588.

This is precisely the principle asserted in the case before us. The Mississippi, Ouachita and Red River Railroad Company, under whose patent the plaintiff claims, had made the entry and received the certificate of that entry and of the payment of the money for this land, September 10, 1856. The patent on this certificate was not issued until April 15, 1875, which was nineteen years after the entire equitable interest in the land in controversy had been vested in the railroad company by virtue of the payment of the money and the register's certificate. As the title of Redfield had its inception in this proceeding, it is now argued, and the Circuit Court must have so decided, that the statute of limitations, instead of leaving it to commence with the issue of the patent, did run through the whole course of the possession of the defendant after the date of the issue of the register's certificate in 1856. Whether the statutes of Arkansas would have authorized an action to recover the possession by virtue of the register's certificate or not, it is precisely the same principle as that asserted by the Supreme Court of Missouri in the case of *Gibson* v. *Chouteau.* The opinion of this court, delivered by Mr. Justice Field in that case, states with great clearness the principle that a statute of limitation does not run against the State unless it is so expressly declared, and adds that : "As legislation of a State can only apply to persons and things over which the State has jurisdiction, the United States are also necessarily excluded from the operation of such statutes." With regard to the relation back to the inception of the title the court says (p. 100): "The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land, and it would amount to a denial of the power of disposal of Congress if these benefits, which should follow upon the acquisition of that title, could be forfeited because they were not asserted before that title was issued."

In regard to the principle asserted by the Supreme Court of Missouri, the opinion says (p. 101): "The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely

for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title. The defendants in this case were strangers to that party and to his equitable claim, or equitable title, as it is termed, not connecting themselves with it by any valid transfer from the original or any subsequent holder. The statute of limitations of Missouri did not operate to convey that claim or equitable title to them. It only extinguished the right to maintain the action of ejectment founded thereon, under the practice of the State. It left the right of entry upon the legal title subsequently acquired by the patent wholly unaffected.

"In the Federal courts, where the distinction between legal and equitable proceedings is strictly maintained, and remedies afforded by law and equity are separately pursued, the action of ejectment can only be sustained upon the possession by the plaintiff of the legal title. For the enforcement of equitable rights, however clear, distinct equitable proceedings must be instituted. The patent is the instrument which, under the laws of Congress, passes the title of the United States. It is the government conveyance. If other parties possess equities superior to those of the patentee, upon which the patent issued, a court of equity will, upon proper proceedings, enforce such equities by compelling a transfer of the legal title, or enjoining its enforcement, or cancelling the patent. But, in the action of ejectment in the Federal courts, the legal title must prevail, and the patent, when regular on its face, is conclusive evidence of that title. . . .

"But neither in a separate suit in a Federal court, nor in an answer to an action of ejectment in a state court, can the mere occupation of the demanded premises by plaintiffs or defendants, for the period prescribed by the statute of limitations of the State, be held to constitute a sufficient equity in their favor to control the legal title subsequently conveyed to others by the patent of the United States, without trenching upon the power of Congress in the disposition of the public lands. That power cannot be defeated or obstructed by any occupation of

the premises before the issue of the patent, under state legislation, in whatever form or tribunal such occupation be asserted." 13 Wall. 101, 104.

These principles are illustrated by other cases in this court, such as *Rector* v. *Ashley*, 6 Wall. 142; *United States* v. *Thompson*, 98 U. S. 486.

The question of the two years' statute of limitation of Arkansas presents other considerations. That statute is in the following language :

"No action for the recovery of any lands, or for the possession thereof, against any person or persons, their heirs or assigns, who may hold such lands by virtue of a purchase thereof, at a sale by the collector, or commissioner of state lands, for the non-payment of taxes, or who may have purchased the same from the State by virtue of any act providing for the sale of lands forfeited to the State for the non-payment of taxes, or who may hold such lands under a donation deed from the State, shall be maintained, unless it shall appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the lands in question within two years next before the commencement of such suit or action."

There can be no question but that more than two years had elapsed after the issue of the patent of the United States, under which plaintiff asserts title, and after his cause of action had accrued during which the defendants were in possession of a part, if not the whole, of the land in controversy. Therefore, if the circumstances of that possession are such as to bring it within the purview of this statute, the possession was a bar to recovery. On this subject the court declared as conclusions of law : 1st. That the tax deed, under which defendants claimed, is void, because the land was sold for taxes of 1868 on a day not authorized by law ; 2d. That under the laws of this State, notwithstanding the said tax deed is void upon its face, for the reason stated, it constitutes a claim and color of title sufficient to put in motion the statute of limitations in favor of any person in possession under it ; 3d. That the possession taken by Parks and Montgomery of said land under said tax deed, in the manner set out in the finding of facts, constitutes in law

actual, peaceable, open, notorious and adverse possession of the whole of said land ; and said possession of said land having been taken by Parks and Montgomery, as early as the month of February, 1874, and maintained continuously by them and their grantees down to the trial of this cause, the plaintiff's right of action to recover said land is barred by the two years' statute of limitation contained in section 4475 of Mansfield's Digest, and also by the seven years' statute of limitation, contained in section 4471 of the same digest.

We think it very clear that the judge was correct in holding this tax deed to be void. It was not merely void by extrinsic facts shown to defeat it, but was absolutely void on its face. But we think that the court erred in holding that such an instrument could create color of title which would bring the case within the foregoing statute of limitations.

The case of *Moore* v. *Brown*, 11 How. 414, brought the question before this court. The court says, p. 425 :

"It is disclosed upon the face of the deed that the auditor sold the land short of the time prescribed by the act. It was not, then, a sale according to law. That must have been as well known by the purchaser as it was by the auditor."

After a somewhat elaborate opinion it was certified to the Circuit Court, from which the case had come by division of opinion, "that the paper offered in evidence by the defendant is a void deed upon the face of it, and was not admissible as evidence for the purpose for which it was offered," — which was to support the possession under the statute of limitations.

A similar decision was made in the case of *Walker* v. *Turner*, 9 Wheat. 541.

Many of the States of the Union have enacted what are called short statutes of limitation, the object of which is to protect rights acquired under sales of real estate for taxes. The general purpose of these statutes is to fix a period of time running in favor of the holder under such tax titles, after which the validity of that title shall not be questioned for any irregularity in the proceedings under which the land was sold. This object was generally attained by the enactment of

short statutes of limitations, by means of which the party in possession under such defective titles can, by pleading this statute, make his title good.

The brief of counsel in this case produces many instances of cases decided in the courts under statutes of this class; and the general principles pervading them is well expressed by the Court of Appeals of Kentucky in the case of *Trustees of Kentucky Seminary* v. *Payne*, 3 T. B. Mon. 161, 164, in which the court says:

"Instead of. twenty years mentioned in the general act, but seven years are required by this act of 1809; but, to form a bar to an action, something more is required by the latter act than an adverse possession for seven years."

In *Waterson* v. *Devoe*, 18 Kansas, 223, 232, the court held that the tax deed, which upon its face showed that it was void, did not support the possession as a bar under the short statute of limitations in that State which applied to actions for the recovery of lands sold for taxes. The court, in that case, said, quoting from the previous case of *Shoat* v. *Walker*, 6 Kansas, 65:

" A tax deed to be sufficient, when recorded, to set the statute of limitation in operation must of itself be *prima facie* evidence of title. . . . It is not necessary that it be sufficient to withstand all evidence brought against it to show that it is bad; but it must appear to be good upon its face. . . . When the deed discloses upon its face that it is illegal, when it discloses upon its face that it is executed in violation of law, the law will not assist it. No statute of limitations can then be brought in to aid its validity."

Similar decisions have been made in the cases of *Mason* v. *Crowder*, 85 Missouri, 526; *Sheehy* v. *Hinds*, 27 Minnesota, 259; *Cutler* v. *Hurlbut*, 29 Wisconsin, 152; *Gomer* v. *Chaffee*, 6 Colorado, 314; *Wofford* v. *McKinna*, 23 Texas, 36.

We do not discover in the statute of Arkansas, nor in the decisions of its courts, cited by counsel for defendant, anything to contravene these views, and we think that both the weight of authority and sound principle are in favor of the proposition that when a deed founded on a sale for taxes is introduced

in support of the bar of a possession under these statutes of limitations, it is of no avail if it can be seen upon its face and by its own terms that it is absolutely void. We are satisfied, therefore, that in regard to the defence under both statutes of limitation, the declarations of law by the court were erroneous, and for that reason its judgment is

*Reversed: and as the finding of facts by the court is before us, and these are the only matters worth attention, it is ordered that the Circuit Court enter judgment for the plaintiff.*