CHARLES D. BAKER v. ANNA MARIA BERG AND OTHERS.[1]

October 12, 1917.

Nos. 20,348—(164).

**Land grant — map of definite location of road — homestead entry.**

1. The right of the railroad company to lands granted under the act of Congress of July 2, 1864, attaches upon the filing with and acceptance by the Interior Department of the map of definite location, but does not apply to lands upon which a homestead entry is pending.

**Same — changes authorized by act of 1871 — when effective.**

2. The act of Congress of March 3, 1871, does not become effective until the filing of the release therein provided for with the Interior Department.

**Same — withdrawal of odd numbered sections from market.**

3. Where the land department transmitted to the district land office a map showing the 10 and 20 mile place and indemnity limits of the grant under the act of March 3, 1865, and withdrew the odd numbered sections within such limits from market, the withdrawal becomes effective and remains in force until revoked.

[1]Reported in 164 N. W. 588.

**Public land — passing of title — adverse possession under state statute.**

4. The title to public land does not pass from the government until the issuance of a patent, and while the title is in the United States no adverse possession of it can, under a state statute of limitations, confer a title which will prevail against the legal title under a patent from the government.

**Adverse claims — waiver of claim by litigating issue.**

5. Where, in an action to determine adverse claim to real estate, defendants plead title in themselves and set out the source thereof, and also specify the source and defects which they claim in plaintiff's title, and the same is litigated upon the trial, they waive the right to claim that the action was improperly brought.

Action in the district court for Otter Tail county to determine adverse claims to vacant and unoccupied real estate. The answer alleged that for more than 27 years defendants, their ancestors, predecessors and grantors had been in actual, open, notorious, visible, continuous, hostile, exclusive and adverse possession of all the real estate in controversy. The case was tried before Parsons, J., who made findings and ordered judgment in favor of plaintiff. Defendants' motion for amended findings of fact and conclusions of law was granted in part and denied in part. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Gunderson & Leach, Hilton & Thompson, H. Steenerson* and *Samuel Herrick,* for appellants.

*N. F. Field* and *Thomas R. Benton,* for respondent.

QUINN, J.

This is an action to determine adverse claim and to quiet the title to lots 8 and 9 of section 5, township 133 north, range 40 west, in Otter Tail county. The trial court found that the land was vacant, that plaintiff was the owner thereof and that defendants have no title or interest therein, and ordered judgment accordingly. Judgment was so entered and defendants appealed.

The land was part of the public domain and open to settlement under the pre-emption and homestead laws. It was also within the limits of the grant of July 2, 1864, to the Northern Pacific Railway Company. June 9, 1870, Francis Pierz entered the same as a homestead. This

entry remained of record until December 14, 1871, when it was canceled. The map of definite location of the company's line of road in Minnesota was filed with and accepted by the Interior Department November 20, 1871, on which date the company's right attached to the granted lands, but did not attach to the premises in question because of the Pierz entry. Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. ed. 363; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. ed. 906.

The land was also within the indemnity limits of the grant to the state of Minnesota by the acts of Congress of March 3, 1857, March 3, 1865, and March 3, 1871,[1] to aid in the construction of the St. Vincent extension of the St. Paul & Pacific Railroad Company's railway. This grant was subsequently owned by the St. Paul, Minneapolis and Manitoba Railway Company and later the Great Northern succeeded thereto.

The act of 1871 authorized the company to so change its branch lines as to form a more direct route from St. Cloud to St. Vincent, with the same proportional grant of lands, to be taken in the same manner along the new lines, as provided for along the former lines by the prior laws. The act of 1871 also provided that it should take effect only upon condition that proper releases be made to the United States by the company, of all lands along the abandoned lines, and that upon the execution of such releases the land so released should be considered as immediately restored to market. The company accordingly changed its branch lines, and its map of definite location thereof was filed with and accepted by the Interior Department on November 18, 1871. The release was filed with and accepted by the Secretary of the Interior December 19, 1871.

On February 6, 1872, the commissioner of the general land office transmitted to the district land office a map showing the 10 and 20 mile place and indemnity limits of the grant, and directed the withdrawal from settlement and entry of all odd numbered sections within such limits in conformity with section 7, of the act of March 3, 1865 [13 St. c. 105, p. 527] which reads: "That as soon as the Governor of the said State of Minnesota shall file or cause to be filed with the Secretary of the Interior maps designating the routes of said road and branches, then it shall be the duty of the Secretary of the Interior to withdraw

[1][11 St. 195; 13 St. 105; 16 St. 588.]

from market the lands embraced within the provisions of this act."

November 5, 1886, Anton C. Berg settled upon the land. January 20, 1887, he filed a pre-emption declaration thereon, and on January 11, 1888, made final proof, paid the purchase money and received a certificate of entry. He fenced the land, placed buildings thereon, in which he lived with his family for a number of years, cleared a few acres which he cultivated, and paid the taxes until the year 1897, when he died intestate, leaving him surviving his widow and nine children, the defendants herein, who have since paid the taxes, pastured and otherwise occupied the land. Berg's estate was probated and the land decreed to defendants.

September 7, 1890, the Manitoba Campany filed in the district land office its list of indemnity selections, which embraced the lots in question apparently in lieu of the west half of the southwest quarter of section 15, 124 north, 32 west, which was rejected by the local land office, upon the ground that it conflicted with the Berg and other entries. Upon appeal the commissioner reversed this decision on March 7, 1892, held Berg's entry for cancelation and allowed the company's selection, upon the ground that the land was withdrawn from entry prior to the time of Berg's settlement thereon. Berg appealed to the secretary of the interior who, on July 23, 1900, affirmed the decision of the commissioner and canceled Berg's entry.

October 24, 1907, the company filed a second selection list which embraced the land in question in lieu of the same land mentioned in its former selection. This selection was approved May 4, 1908. On May 7, 1908, the land was patented to the state and later by it conveyed to the Great Northern and in June, 1914, by that company conveyed to the plaintiff who brought this action.

Under the act of 1871, there was no operative grant until there was an effective release of the lands along the abandoned lines. The transaction was in the nature of an exchange of properties. The act granted to the company the land, to take effect only upon the company's releasing the lands along the abandoned lines to the government, and when this was done the land department was to withdraw the granted lands from market and afford the company an opportunity to select. Such release was filed with and accepted by the department December 19, 1871, five

days after the Pierz entry was canceled, on which date the act took effect and the company's right of selection attached. While the map of definite location was filed prior to the cancelation of the Pierz entry, and the release was adopted by the company on the day preceding the cancelation, yet it was not executed so as to become effective until it was filed with the department. St. Paul & Pac. R. Co. v. Northern Pac. R. Co. 139 U. S. 1, 11 Sup. Ct. 389, 35 L. ed. 77.

One question is, whether the land department was in error of law in holding the land to have been withdrawn and not open to settlement at the time of Berg's entry. We are of the opinion that the ruling was correct. The company had filed the release as provided by the act. The department had withdrawn the land from settlement in compliance with the statute. No attempt to revoke the withdrawal had been made at the time of the settlement or filing. The selection was made prior to the passage of the act of September 29, 1890. The selection was finally approved. As said in the case of Oregon & C. R. Co. v. U. S. 189 U. S. 103, 112, 23 Sup. Ct. 615, 47 L. ed. 726: "It has long been settled that while a railroad company, after its definite location, acquires an interest in the odd-numbered sections within its place or granted limits— which interest relates back to the date of the granting act—this rule is otherwise as to lands within indemnity limits. As to lands of the latter class, the company acquires no interest in any specific sections until a selection is made with the approval of the land department; and then its right relates to the date of the selection."

In the answer defendants allege title by adverse possession. The reply puts this allegation in issue. At the trial there was testimony offered along this line. Defendants' second assignment of error goes to this phase of the case. Counsel in their briefs give considerable space thereto. The trial court made no findings thereon, nor did appellants so request.

The title to the land did not pass from the government until the issuance of the patent in 1908, and while the title was in the United States, no adverse possession of it can, under a state statute of limitations, confer a title which will prevail against the legal title under a patent from the government. Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L.

138 M—8

ed. 327; Gibson v. Chouteau, 13 Wall. 102, 20 L. ed. 534; Simmons v. Ogle, 105 U. S. 271, 26 L. ed. 1087.

The contention of appellants, that because the proof showed that plaintiff was never in possession of the premises, and that the same were not vacant and unoccupied, the action cannot be maintained, should not be sustained. Defendants allege in their answer title in themselves and set forth the source thereof. They also specify the source and defects in the plaintiff's alleged title. This being the status of the pleadings, the case comes within the rule stated in Mitchell v. McFarland, 47 Minn. 535, 50 N. W. 610, and the point that the action was not properly brought is waived.

It is contended that the Glende entry referred to in the briefs was in the same situation as the entry here in question, and that it was inconsistent to allow one and deny the other. The record shows that the Glende entry was patented before the railroad company filed its selection and that the decision rejecting the selection was upon the ground that the department had lost jurisdiction over the land by the issuance of the patent. The ruling was correct.

Affirmed.