## EDWARD FLORANCE v. ANGELIQUE GOSLIN AND OTHERS.[1]

February 3, 1922.

No. 22,491.

**Adverse possession limited to specific tract occupied.**

1. In the absence of color of title the adverse possession of a separate and independent tract of uninclosed farm land by one claiming as owner, can have no necessary relation to or extend rights in an adjoining tract of similar land.

**Same.**

2. The rule is that the adverse possession in such case, when not clearly otherwise shown, is restrained and limited to the tract actually occupied by the claimant.

**Otherwise when color of title and dominion over subdivisions of one tract.**

3. The rule is different when there is color of title and dominion is exercised over several adjoining parcels forming one tract as a whole.

Action in the district court for Kittson county to recover possession of certain land and $1,000 for withholding possession thereof. The case was tried before Grindeland, J., and a jury which answered affirmatively the special questions submitted to it as to whether defendants had obtained title by adverse possession to each of six tracts of land. From an order denying his motion for a new trial as to specified tracts, plaintiff appealed. Reversed.

[1]Reported in 186 N. W. 691.

*R. V. Blethen, M. J. Daly, Charles Loring* and *G. A. Youngquist,* for appellant.

*John & John D. Jenswold,* for respondents.

BROWN, C. J.

The land involved in this action is situated in the extreme northwest corner of the state, in Kittson county, bounded on the north by Canada and on the west by the Red River of the North. It is composed of several separate subdivisions, as shown by the government survey, and contains 238 acres. For convenience of reference the parties on the argument divided it by a line extending east and west substantially through the center, describing the tracts thus set apart as the north and south portions. The north portion is made up of government lots 1 and 2, and the north half of the southeast quarter of section 26; the south portion contains government lot 3 and the south half of the southeast quarter of the same section. Plaintiff holds the patent title to all the land, while defendants claim by adverse possession. The issue thus raised was submitted to a jury, in the form of six special questions covering separately each subdivision of the land, and the jury found that defendants had adverse title to each. For error in the instructions of the trial court upon a question peculiar to the south portion of the land, a new trial as to that tract was granted, a new trial being denied as to the special verdicts covering the north portion. Plaintiff appealed.

The substantial question in the case is whether the evidence supports the verdicts so sustained by the trial court.

The land formerly was a part of the Chippewa Indian Territory, but was ceded to the United States by treaty ratified and approved in 1864. It is naturally adapted to agriculture, and if cleared of timber and brush would make rich farm land, capable of producing large annual crops. It contains some timber, much thereof having been cut and sold in years gone by; a large part is covered with brush, a few small tracts of prairie, and some meadow. In 1853 Augustine Goslin, husband of defendant Angelique Goslin and the father of the other defendants, with his wife and children, settled upon lot 2 of the north portion, making such use thereof as was

suited to his habits of life, cutting down and selling wood to passing steamers then and for a number of years thereafter navigating the adjoining river, cropping a small area and pasturing cows and horses near and adjacent to his dwelling, all within the boundaries of lot 2. But no rights are or can be predicated upon that settlement and it may be passed without further mention. The land was ceded to the United States in 1864, and was patented by the government to plaintiff's grantors, the north portion in 1881 and the south portion in 1882, and in accordance with the subdivisions contained in each. Whatever rights defendants have to the land or any part of it originated subsequent to the time it was so patented. Baker v. Berg, 138 Minn. 109, 164 N. W. 588. It is claimed that defendants remained in the actual possession of all the land for 15 years subsequent to that time under claim of ownership.

Defendants are all mixed-blood Indians, and, though belonging to and sustaining no particular tribal relations with full bloods, they possessed in a large measure the Indian habits and customs. They were not agriculturists, particularly the senior Goslin; he was a hunter, devoting in appropriate seasons considerable time and energy to hunting buffalo. The family lived on the land after it was so patented to plaintiff's grantors until 1894, when the senior Goslin died; that was prior to the expiration of the necessary 15 years of occupancy. The widow and some of the other members of the family remained in possession, it is claimed, until 1897, when the widow moved to a home on the south portion of the land, subsequently moving from the land altogether, though one or two of the children, then adults, may subsequently have remained thereon.

The farming operations during this possession were comparatively of a light nature. Small tracts of a few acres were occasionally cropped, the wild hay cut and used as feed for stock, but there was no attempt to devote the entire tract or any considerable portion thereof to continuous farming operations. The greater part remained in its natural state, covered with brush and timber, and uncultivated. It was not inclosed by fence, nor other method adopted to indicate to persons who might have an interest in the land a claim of ownership to the whole or to any particular part or

subdivision other than that actually occupied. A fence, extending from the north boundary diagonally to the river to the southwest, inclosed the dwelling situated on lot 2, a part of lot 1 and the west end of the north half of the southeast quarter, all within the north portion of the land. But that was not constructed to designate the limits of Goslin's claim, but to keep his cattle from straying to the east upon the lands of others.

Defendants paid no taxes; whatever taxes were levied against the land subsequent to the date of the patents were paid by the predecessors of plaintiff in interest. Plaintiff paid them subsequent to the year 1897. There was a claim that Goslin paid them for four successive years prior to 1897. But no competent evidence was presented in substantiation of the claim. No tax receipts were produced, nor such payments disclosed by any tax record offered in evidence. Nor does it appear for what years the payments were made, if at all, nor upon what part or portion of the land the tax burden was thus raised. It was further claimed that Goslin had been advised not to pay the taxes until the government gave him title to the land, and that was presented as an excuse for his failure to meet subsequent payments. But Goslin and the person claimed to have so advised him are both dead, and the declarations by them to the effect stated were incompetent, coming through an interested party to the action.

It is also claimed that Goslin applied to locate the land or a part thereof under Indian scrip, but the evidence in support of the claim is quite shadowy and insufficient. He did file a preemption entry on the south portion of the land, lot 3 and the south half of the southeast quarter, on some date in 1881, but the entry was canceled by the government in 1883 as erroneously allowed by the local land officers; the down payment was later returned to his heirs. But that entry so made and canceled is of no special importance, except as it shows an effort by Goslin to acquire title to the south portion of the land. We are here concerned with the north portion only. Goslin therefore had no color of title to the land or any part thereof during the period of his occupancy, though, as urged by counsel, he may have thought he had such title. But, whatever his thoughts

in the premises, he took no steps other than as heretofore stated to definitely lay claim to any particular part of the land, other than that actually occupied by him as his dwelling and the small cultivated outlying tracts. His occupancy and use of the north portion was never, so far as the record discloses, questioned by the fee owner, until the commencement of this action. His right to the possession and use of the south portion was challenged by an ejectment suit subsequent to the removal of the family to that part of the land. But, as that tract is not here involved, that suit may be passed without further statement or comment.

We need not go further into the facts; it would serve no useful purpose. What has been said, barring some probable minor inaccuracies, discloses the general state of the record and of the elements controlling the rights of the parties, from which we conclude that enough is not shown to justify the conclusion of the jury to the effect that defendants have acquired title by their possession and occupancy of the whole of this tract of 238 acres of land. We do not say nor attempt to hold that they may not, on the present showing, lay legal claim to some particular subdivision or part of either the north or south portions, unless their rights in the south portion have been lost by the deeds of conveyance involved in the action as to that part of the land. But we do hold that the evidence found in the present record will not justify their claim to the whole of either. What the situation may be on a new trial must be left to the consideration of the court below when the evidence is again presented.

In reaching this conclusion we apply the generally accepted doctrine that the adverse possession under claim of ownership of one separate and independent tract or parcel of uninclosed farm land can, without color of title, have no necessary relation to or extend rights in adjoining tracts of similar land. The rule is that the adverse possession in such case is by law, when not clearly otherwise shown, restrained and limited to the tract or parcel actually occupied by the claimant. Barber v. Robinson, 78 Minn. 193, 80 N. W. 968; Sage v. Larson, 69 Minn. 122, 71 N. W. 923; Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; Cain v. Highland Co. 134 Minn. 430, 159 N.

W. 830, 872. The rule is different where there is color of title and claim is made to several adjoining subdivisions over which the claimant exercises dominion and control as a whole. 1 Dunnell, Minn. Dig. p. 30.

Our conclusion therefore is that for the insufficiency of the evidence to sustain the verdicts returned by the jury there should be a new trial. In view of the result it is unnecessary to consider the assignments challenging the rulings of the trial court in the admission or exclusion off evidence. If there were errors in this respect they are not likely to occur on another trial, and we pass them without further remark.

Order reversed and new trial granted.