**PAVELL et al. v. BERWICK et al.**

**STARK et al. v. SAME.**

**Civil Actions Nos. 214, 215.**

District Court, W. D. Louisiana, Lake Charles Division.

Jan. 16, 1943.

Thomas F. Porter, of Lake Charles, La., for plaintiffs W. H. Stark, Wainer Fur Corporation, F. J. Pavell, and W. T. Fells.

S. W. Plauche, Jr., of Lake Charles, La., for plaintiff F. J. Pavell.

Alan B. Cameron, of Orange, Tex., of counsel for W. H. Stark and Wainer Fur Corporation.

D. C. Bland, of Orange, Tex., of counsel for F. J. Pavell and W. T. Fells.

Griffin T. Hawkins, of Lake Charles, La., and Fred A. White, of Port Arthur, Tex., for defendants.

PORTERIE, District Judge.

The plaintiffs in these two cases, jointly tried because the same defendants are in each case and similar issues existed in each case, allege that one is the owner and the other the lessee from the owner of the lands, and that the defendants, who are without any title, are interfering with plaintiffs' possession by trapping for muskrat and other fur-bearing animals and, consequently, pray that a permanent injunction issue against the defendants. In prohibition of the alleged trespasses, a restraining order, then a temporary injunction, have issued already, and the case has now been tried on its merits as to whether or not a permanent injunction should issue.

The defendants have alleged in their answer that, because of thirty years' possession to a portion of the lands, they are with title (La.Civil Code, Arts. 3499–3504), and pray as a result of this trial to be declared the owners of that portion; and, as to the remaining portion of the land, they allege that by virtue of certain trapping leases acquired by them from alleged fee owners, namely, James J. Flanagan, C. S. Flanagan, Herbert Henderson, W. L. Pritchard, W. J. Burch, Mrs. G. H. Bliss, and A. N. Peckham, who had leased to one Jake Meyer, who in turn had leased to them, the injunction should not issue, as they have the legal right to be on the premises for trapping purposes.

It is conceded that all of the lands at issue were embraced in what was the Fort Sabine Military Reservation. The legal history of this Reservation is decisive of the issues of the suit here, and for that reason the full details (to be considered as part of our findings of fact) are given.

The reservation mentioned was established by the President of the United States on December 20, 1838, and on March 25, 1871, was abandoned by Executive order, pursuant to the provisions of Act of February 24, 1871, Chap. 68, 16 Stat. at L. 430, which authorized the Secretary of War to transfer it to the control of the Secretary of the Interior, to be sold for cash.

During the intervening period, an act was passed by Congress (Act of March 2, 1849, Chap. 87, 9 Stat. at L. 352) which purported to grant to the state of Louisiana all swamp and overflowed lands in the state, and provided that the fee simple to such lands would become vested in the state upon approval of a list of the lands by the Secretary of the Treasury (afterwards succeeded by the Secretary of the Interior).

After the Fort Sabine Military Reservation was abandoned, Garfield, the Secretary of the Interior, on December 10, 1895, endorsed upon a list of these lands that

the list was "approved to the state of Louisiana under the act of Congress of March 2, 1849, as supplemented and enlarged by the act of Congress of September 28, 1850, 9 Stat. at L. 519, Chap. 84 * * *."

On June 6, 1904, the then Secretary of the Interior revoked the prior approval of these lands to Louisiana on the ground that they were not within the swamp and overflowed land grants of 1849 and 1850, because at that time they were embraced in a military reservation.

In 1908 the United States Supreme Court in State of Louisiana v. Garfield, 211 U.S. 70, 29 S.Ct. 31, 43 L.Ed. 92, held that the approval of the lands in 1895 to Louisiana was "void upon its face", and that title to the lands was still in the United States. Said the Court: "The approval proceeded upon a manifest mistake of law; that upon the abandonment of the military reservation the land fell within the terms of the grant of 1849. Therefore it was void upon its face." 29 S.Ct. at page 33.

By act of July 5, 1884, Chap. 214, Secs. 2, 3, 23 Stat. at L. 103, 43 U.S.C.A. §§ 1072, 1073, Congress provided that all lands in abandoned military reservations might be sold for cash, reserving to bona fide settlers of such lands the right to homestead 160 acres of them.

Before the case of State of Louisiana v. Garfield, supra, was decided, certain persons purchased lands in this reservation from the State, on the theory that the lands in the reservation had passed to the state as swamp or overflowed lands, under the approval by the Secretary of the Interior.

In order to protect such purchases, however, Congress, by Act of August 24, 1922, chap. 287, 42 Stat. 830, provided:

"That, subject to the provisions of this Act, the title of all persons who prior to January 1, 1909, purchased from the State of Louisiana any lands formerly included in what was known as the Fort Sabine Military Reservation, in Cameron Parish, in the State of Louisiana, established by Executive order of December 20, 1838, and abandoned March 25, 1871, pursuant to the Act of Congress of February 24, 1871 (Sixteenth Statutes at Large, page 430), shall be confirmed and validated against any claim or interest of the United States: Provided, That satisfactory evidence of such purchase with description of the lands claimed by each applicant, in accordance with the system of United States public-land surveys, *be submitted to the Secretary of the Interior within six months from and after the approval of this Act:* * * *." (Italics ours)

"Sec. 2. That the lands within the limits of such abandoned military reservation not affected by the foregoing provision of this Act shall be disposed of under the provisions of the Act approved July 5, 1884 (Twenty-third Statutes at Large, page 103)."

█ We find as a fact that the legal title to the lands is in the plaintiffs, clearly established by the record, beginning with the United States patents, and followed in an uninterrupted chain by deeds, leases, judgments, succession records, and other written evidence of title. The authority of this chain of title is not disputed by the defendants except that they claim by ownership based on squatters' possession of thirty years.

█ It is also found as a fact by the Court that the defendants at the time of the Congressional act of August 24, 1922 (quoted above) submitted nothing to the Secretary of the Interior, either within six months from and after the approval of the act or at any time thereafter.

█ We find also as a fact that the plaintiffs were in possession of the lands, trapping on them, and exercising other acts of dominion, at the time of the filing of this suit. The defendants in their answer ask for payment of the rat pelts taken from the lands by the plaintiff; this is corroboration by the pleadings of the defendants. Invoices from handlers of furs for numerous sales are in the record. The greater part of the lands at issue was subjected, through leases executed by one of the plaintiffs, H. J. Lutcher Stark, to seismological exploration.

Another finding by us as a fact is there is no evidence whatsoever by any patent or deed through which the defendants claim ownership.

We should now apply the principles of law to the above facts.

█ One cannot acquire land in Louisiana by the prescription of thirty years as against the United States. Pepper et al. v. Dunlap, 9 Rob., La., 283; Evans v. Jackson, 165 La. 737, 116 So. 168; Cocke v. Spangler, 159 La. 409, 105 So. 413. At

page 414 (105 So.) of the last-cited case is found this language: "As the title to the lands remained in the United States government until 1923, and as prescription cannot run against the government, the learned trial judge correctly overruled defendants' plea of prescription."

The presumption that the United States has parted title to any part of the public domain is not favored by the law. Bres v. Louviere et al., 37 La.Ann. 736; Pepper et al. v. Dunlap, supra, 9 Rob., La., at page 288. The language in the latter case is: "But we know of no law which establishes the presumption of a grant of any part of the public lands."

A very recent expression (1942) from a Federal district court interpreting the Louisiana law is that of Manhattan Land & Fruit Co. v. Buras, D.C., 43 F.Supp. 361. The facts and general background of that case and of this case are closely analogous.

The Supreme Court of the United States is in consonance. See Northern Pacific Railroad Co. v. McComas, 250 U.S. 387, 39 S.Ct. 546, 63 L.Ed. 1049; Redfield v. Parks, 132 U.S. 239, 10 S.Ct. 83, 33 L.Ed. 327.

The defendants have, in our belief, relied quite erroneously, during their admittedly long squatting on the property, on the theory that the lands in the military reservation had left the public domain and had passed to the State of Louisiana as "swamp or overflowed lands", under the approval by the Secretary of the Interior on December 10, 1895.

Then, the like legal reasoning and consequent conclusion have to be applied against the secondary claim of the defendants, that they are lessees of trapping rights as previously stated. Their predecessors have no valid trapping rights because these rights are advanced to be legally valid upon the erroneous inference that the lands had passed to the State of Louisiana as "swamp or overflowed lands", then from the State to private full-title ownership, from which ownership the trapping rights are derived by the present defendants. This source of title is valueless under the law, because neither the original owners of land patents from the State nor any of those deriving from them is shown to have complied with the Act providing for the confirmation of title of purchasers from the State of Louisiana of lands formerly included in the Fort Sabine Military Reservation. Moreover, but slight acreage in the land patents placed in the record is located in the former reservation.

Therefore, the secondary contention by the defendants, as to some of the area, against the issuance of the permanent injunction against them, because of valid trapping leases held by them, is unavailing.

None of the lands in question left the public domain until 1922 (Act of Congress of August 24, 1922, c. 287, 42 Stat. 830); it is obvious—granting, for the sake of argument, that should the defendants qualify in their legal possession under the Louisiana law (a fact which this court does not declare has been proved, and which this court need not decide)—that the period of thirty years necessary has not elapsed from 1922 to the date of the filing of this suit.

Judgment for the permanent injunction as prayed for is granted and will be signed upon presentation.