## LEWIS et al. v. MOORE.

### No. 4480.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1952.

4. The "Raintest" bag and the Rohn & Haas bag.

W. F. Semple, Tulsa, Okl., for appellants.

Merrick A. Whipple, Tulsa, Okl., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Sallie Beaver Moore brought this action against Lewis, Prather, and J. M. Frates, Jr., and certain other defendants whose interests are not involved in this appeal, to quiet her title to Lots 5, 6, 7 and 8 [1] of Mingo Valley Subdivision No. 1, Tulsa County, Oklahoma. The lots were a part of a 57½ acre tract of land.

On March 10, 1928, the title to the 57½ acre tract was vested in Cyrus S. Avery and Essie M. Avery, subject to a mortgage running to the Exchange Trust Company of Tulsa, Oklahoma, for the benefit of Mollie Davis, nee Jones. On that date the Averys, with the consent of the Exchange Trust Company as trustee, caused a plat and deed of dedication to be made whereby the lots were made a part of Mingo Valley Subdivision No. 1.

The trustee instituted an action to foreclose the mortgage against the Averys and thereafter, on August 16, 1937, a sheriff's deed was issued conveying the 57½ acre tract to Mollie Davis, nee Jones. That deed contained a clause restricting alienation in the terms found in what is commonly called the Carney-Lacher form of deed.[2] That deed was recorded August 24, 1937. On September 27, 1939, Davis conveyed the 57½ acre tract by deed to John Beaver. That deed contained the Carney-Lacher form of deed provision restricting alienation by the Indian owner and was approved by the Secretary of the Interior. On May 24, 1943, John Beaver conveyed the 57½ acre tract to the United States in trust for Sallie Beaver Moore. On January 9, 1951, the United States conveyed the 57½ acre tract to Sallie Beaver Moore, by fee simple patent which contained no restrictions against alienation.

In the year 1929 and annually thereafter, except during the period of time when Tulsa County claimed title to the lots by virtue of a resale tax deed dated June 7, 1938, referred to hereinafter, the taxing authorities of Tulsa County levied and assessed ad valorem taxes against the lots as part of a platted subdivision in such county. During the period from 1929 to 1943, inclusive, the taxing authorities of Tulsa County assessed and levied ad valorem taxes against the 57½ acre tract, embracing the lots, and the United States, acting in behalf of Mollie Davis, nee Jones, and John Beaver, in due course, paid all of the taxes so assessed and levied. During the years subsequent to 1943, no assessment of ad valorem tax was levied upon the 57½ acre tract because of the provisions of the Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C.A. § 501 et seq.

The taxes levied and assessed against the lots as part of a platted subdivision were not paid and, based upon such assessment, they were sold to Tulsa County at a tax resale held by the County Treasurer of Tulsa County in April, 1938, and on June 7, 1938, a resale tax deed was issued to Tulsa County purporting to convey the lots to such county.

On September 30, 1940, the Board of County Commissioners of Tulsa County executed, acknowledged, and delivered a coun-

---

1. Hereinafter referred to as "the lots."
2. The Carney-Lacher form of deed contains a clause forbidding conveyances of all types by the Indian owner, unless such conveyances are approved by the Secretary of the Interior.

ty deed purporting to convey the lots to Frates, Jr. That deed was recorded January 29, 1941.

On May 23, 1941, Frates, Jr. executed a deed of the lots to the Chandler-Frates Company, which was recorded May 26, 1941. On April 20, 1942, the Chandler-Frates Company executed a deed of the lots to O. Dean Lewis. On May 26, 1942, Lewis executed a deed of the lots to Hugh M. Prather. The last two mentioned deeds were recorded June 2, 1942.

As a defense to the action the defendants set up the Oklahoma Statute of Limitations.[3]

Section 2 of the Act of Congress of April 12, 1926, 44 Stat. 239, provided that:

"The statutes of limitations of the State of Oklahoma" should "be applicable to and * * * have full force and effect against all restricted Indians of the Five Civilized Tribes, * * * the heirs or grantees of any such Indians, and * * * all rights and causes of action heretofore accrued or hereafter accruing to any such Indians or their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the State of Oklahoma, and" might "be pleaded in bar of any action brought by or on behalf of any such Indian, his or her heirs or grantees, either in his own behalf or by the Government of the United States, or by any other party for his or her benefit, to the same extent as though such action were brought by or on behalf of any other citizen of said State".

Section 2 of the Act of June 20, 1936, Public Law 716 of the 74th Congress, 49 Stat. 1542, 25 U.S.C.A. § 412a, reads as follows:

"Sec. 2. All lands the title to which is now held by an Indian subject to restrictions against alienation or encumbrance except with the consent or approval of the Secretary of the Interior, heretofore purchased out of trust or restricted funds of said Indian, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress."

Section 1 of the Act of June 26, 1936 (The Oklahoma Welfare Act), Public Law No. 816 of the 74th Congress, 49 Stat. 1967, authorized the Secretary of the Interior in his discretion to acquire by purchase, relinquishment, gift, exchange or assignment any interest in lands, including trust or otherwise restricted lands in Indian ownership, taking the title thereto in the name of the United States in trust for the tribe, band, group, or individual Indian for whose benefit such lands were acquired. It provided that such lands should be agricultural and grazing lands of good character and quality and should be in proportion to the respective needs of the particular Indian or Indians for whom such purchases should be made, and that while the

---

3. Title 12, Okl.Stat.Ann. § 93, provides:
   "Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter;
   "(1) An action for the recovery of real property sold on execution, or for the recovery of real estate * * *.
   *       *       *       *       *
   "(3) An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed.
   *       *       *       *       *
   "(6) Numbered paragraphs 1, 2 and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon which such deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise; provided that this paragraph shall not be applied so as to bar causes of action which have heretofore accrued, until the expiration of one (1) year from and after its effective date. [As Amended Laws 1945, p. 37, s. 1; Laws 1949, p. 95, s. 1]."
   Title 60 Okl.Stat.Ann. § 333 provides:
   "Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

title thereto was held by the United States, such lands should be free from any and all taxes, except an Oklahoma gross production tax upon oil and gas produced from such lands.

The Act of May 19, 1937, Public Law No. 96 of the 75th Congress, 50 Stat. 188, 25 U.S.C.A. § 412a, specifically amended Section 2 of Public Law No. 716 of the 74th Congress to read as follows:

"Sec. 2. All homesteads, heretofore purchased out of the trust or restricted funds of individual Indians, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress: Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead."

The trial court held that Public Law 816, supra, was not amended by Public Law 96, supra; that the 57½ acre tract of land was exempt from taxation during the period the title thereto was held in trust by the United States for the benefit of Sallie Beaver Moore; that the provisions of Public Law 96, supra, requiring a selection by the Indian owner or owners was inapplicable to the 57½ acre tract of land; that the duplicate assessment of the lots was unlawful; that the payment of the taxes assessed against the 57½ acre tract of land, including the lots, released and discharged the lots from all liens and claims for taxes; that the resale of the lots and the resale tax deed were void; that the conveyances to persons who claimed title through such resale tax deed were void; and that the time during which the title to the 57½ acre tract was held in trust by the United

States for the benefit of Sallie Beaver Moore should not be included in computing the period of limitation under the Oklahoma Statute of Limitations, and hence the period of limitation had not run against Sallie Beaver Moore. This is an appeal from a judgment in favor of Sallie Beaver Moore.

It seems clear to us that Public Law 716 and Public Law 816 deal with different subject matters. The former applies to lands held by an Indian, subject to restrictions against alienation, theretofore purchased out of trust or restricted funds of such Indian, and the latter applies to lands acquired by the Secretary of the Interior, the title to which is taken in the name of the United States in trust for the benefit of a tribe, band, group or individual Indian. The acquisition of the lots by the United States through the conveyance by John Beaver to the United States in trust for Sallie Beaver Moore was pursuant to Public Law 816. We think it equally clear that Public Law 96 amended Public Law 716 and had no application to Public Law 816. This, because the amendatory act specifically amends Section 2 of Public Law 716 and deals with a subject matter different from that dealt with by Public Law 816.

The period of limitation of the Oklahoma statute did not run in favor of the defendants below unless the time during which such lots were held in trust by the United States for the benefit of Sallie Beaver Moore may be included in computing the period of limitation.

It must be conceded that Section 2 of the Act of Congress of April 12, 1926, by its terms embraces an action brought by the Government of the United States in behalf of a restricted Indian of any of the Five Civilized Tribes, but it does not in terms embrace an action brought by the United States in its own behalf to enforce a public right, effectuate a governmental policy, or protect an interest vested in it as a sovereign, the capacity in which it held the 57½ acre tract in trust for Sallie Beaver Moore.[4]

4. See Board of County Commissioners v. Seber, 10 Cir., 130 F.2d 663, 668; Af-

firmed, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094, and United States v. State of

■ Congress has power to provide that a State statute of limitations shall have application to suits instituted by the United States, but statutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government.[5]

The immunity of the sovereign from the defenses of laches or state statutes of limitation is historic. The United States should not be held to have waived such immunity by a Federal statute unless such waiver is plainly provided.[6]

In Board of Commissioners of Jackson County, Kansas v. United States, 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313, the court, referring to the immunity of the sovereign from the defenses of laches and state statutes of limitations, said: " * * * the immunity of the sovereign from these defenses is historic. Unless expressly waived, it is implied in all federal enactments."

Here, the title to the lots was taken in the name of the United States in trust for the benefit of Sallie Beaver Moore to effectuate a governmental policy with respect to the guardianship of its Indian wards, evidenced by Public Law 816. In United States v. Minnesota, 270 U.S. 181, 196, 46 S Ct. 298, 301, 70 L.Ed. 539, the court said: "And it also is settled that state statutes of limitation neither bind nor have any application to the United States, when suing to enforce a public right or to protect interests of its Indian wards." [7]

We are of the opinion that if the United States, during the time it held the title to such lots in its name in trust for the benefit of Sallie Beaver Moore, had brought an action to quiet the title thereto, the Oklahoma Statute of Limitations could not have been invoked against the United States.

■ When the Secretary of the Interior determined that Sallie Beaver Moore no longer required the protection afforded through the holding of the title to the lots in the United States in trust for Sallie Beaver Moore, restricted against alienation by her, and exempted from taxation, it conveyed the lots to her free from any restrictions against alienation. If, upon such latter conveyance to Sallie Beaver Moore, the defendants below could assert the Oklahoma Statute of Limitations in an action brought by her to quiet the title to the lots and include in computing the period of limitation the time during which the title to the lots was held in trust by the United States for the benefit of Sallie Beaver Moore, then the governmental policy of the United States in holding the title to the lots in trust for Sallie Beaver Moore, restricted against alienation and exempted from taxation, during such time that she needed that protective device, and then conveying an effective title to the lots to Sallie Beaver Moore, which she could enjoy, would be frustrated. Indeed, the power of the United States to convey a title by patent to Sallie Beaver Moore, which inured to her benefit, would be wholly set at naught.

The decisions of the Supreme Court in Gibson v. Chouteau, 13 Wall. 92, 80 U.S. 92, 20 L.Ed. 534 and Redfield v. Parks, 132 U.S. 239, 10 S.Ct. 83, 33 L.Ed. 327 are closely analogous. In those cases the Supreme Court held that the period during which a patentee of public lands held the equitable title to such lands prior to the issuance of patent could not be included in computing the period of limitation under a

Minnesota, 270 U.S. 181, 194, 46 S.Ct. 298, 70 L.Ed. 539.

5. Harp v. United States, 10 Cir., 173 F.2d 761, 763–764; E. I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S. Ct. 364, 68 L.Ed. 788.

6. E. I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; Board of Comm'rs of Jackson Co. v. United States, 308 U.S. 343, 351.

7. See, also, Board of Comm'rs of Jackson Co. v. United States, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313; Muskogee County v. United States, 10 Cir., 133 F.2d 61, 63, certiorari denied 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701; Bryan County v. United States, 10 Cir., 123 F.2d 782, 786, certiorari denied 315 U.S. 819, 62 S.Ct. 907, 86 L.Ed. 1216; Board of Comm'rs of Caddo Co. Okl. v. United States, 10 Cir., 87 F.2d 55, 57.

state statute of limitations, set up as a bar to an action to quiet title brought by the patentee or his grantee, for the reason that such an application of the state statute of limitations would interfere with the paramount power of the United States effectively to make disposition of the public lands.

Accordingly, we conclude that the time during which the title to the lots was held in trust by the United States for the benefit of Sallie Beaver Moore could not be included in computing the period of limitation under the statute of Oklahoma.

Affirmed.

Russell, Circuit Judge, dissented.