THOMAS H. BUSH *et al.*

*v.*

JAMES R. STANLEY *et al.*

*Filed at Springfield September 27, 1887.*

1. EVIDENCE AND DEPOSITIONS — *admissibility of depositions after making new parties.* In a chancery case, the court, by an order, found that the original complainant had no such interest in the subject matter as to enable him to maintain the bill, whereupon he was given leave to amend the same by the addition of a new party complainant, and for the filing of cross-bills, but the original bill was not dismissed; and it was ordered, by consent of the parties, that the depositions and evidence before taken, so far as competent, might be read on the final hearing, which was continued: *Held,* that there was no error in admitting such depositions in evidence on the final hearing.

2. SAME—*stipulation that depositions taken may be read.* The parties to a suit in chancery have the right to agree, and have their agreement entered of record, that the depositions and evidence already taken in certain other cases, so far as the testimony is competent, may be read on the hearing, and such an agreement waives all objections to the time and mode of taking the depositions.

3. SAME—*parol evidence—to prove contents of lost deed.* Under the Revised Statutes, chapter 116, section 28, providing that when it is shown orally in court "that the original of any deeds, conveyances or other written record evidence has been lost or destroyed, or not in the power of the party wishing to use it on the trial to produce the same, and the record thereof has been destroyed by fire, or otherwise, the court shall receive all such evidence as may have a bearing on the case, to establish the execution or contents of the deeds, conveyances, records or other written evidence so lost or destroyed," the recollection of witnesses as to the contents of such lost or destroyed instruments is clearly competent, and their recollection may be refreshed by reference to notes taken by them, and known to be correct.

4. SAME — *refreshing witness' recollection.* Where a witness, on his direct examination, simply refers to memoranda to refresh his memory, and then testifies to his recollection thus aided, if such memoranda are given in evidence, on his cross-examination, at the instance of the adverse party, the latter can not complain of their admission.

5. SAME—*land patent, as paramount to certificate of entry.* While the statute makes the official certificate of any register or receiver of a land office of the United States, evidence of certain things, yet it declares that

the patent issued by the United States shall be deemed and considered a better legal and paramount title in the patentee, his heirs or assigns, than such register's or receiver's certificate.

6. Same—*certificates of redemption from sale for taxes and special assessments.* The law requires the clerk of the county court to make an entry in the records of his office, of all redemptions from sales of lands for taxes and special assessments, and provides that the books and records belonging to his office, or copies thereof, certified by him, shall be deemed *prima facie* evidence to prove the sale of land, etc., for taxes or special assessments, and the redemption of the same. Certificates of the redemption of land made by such clerk are, within the meaning of the statute, "certified copies of the record of redemption," and are admissible as evidence of redemption.

7. Bankruptcy—*who may plead discharge.* A discharge in bankruptcy, like the Statute of Limitations, does not annul the original debt or liability of the bankrupt, but merely suspends the right of action for its recovery. It therefore follows, that no one but the bankrupt can plead his discharge in avoidance of his liability. He may, if he choose, treat his covenants and obligations as still binding upon him.

8. Resulting trust—*when it arises.* Where a party furnishes another with money to enter land for the former, and the latter enters the same in his own name, and afterwards transfers the certificate of purchase to the former, or makes him a deed, which is lost, and the patent is issued to the latter, a resulting trust will arise in favor of the party who furnished the money, and to his grantees, and the court will decree a conveyance of the land accordingly.

9. Same—*by whom it may be asserted—after discharge in bankruptcy.* The fact that a party who has conveyed property by warranty deed has been discharged as a bankrupt, will not prevent him from maintaining a bill to perfect the title thereto, by establishing a resulting trust in his favor, as against adverse claims, and enjoining an action of ejectment by the holder of the legal title against those claiming under his deed.

10. Same—*adjusting equities—the trustee excluded.* A decree on a bill to establish and enforce a resulting trust, found that S., one of the parties, owned the land, subject to a mortgage to C.: *Held,* that the defendant (the trustee) had no interest in adjusting the equities and priorities between S. and C.

11. Laches—*to whom availing.* The doctrine of *laches,* in respect of the assertion of ownership of land, can be invoked only by one in possession against one out of possession.

Appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

This was a bill in equity, to declare a resulting trust, compel the conveyance of the legal title, and enjoin the prosecution of an action of ejectment, exhibited in the Superior Court of Cook county, by John L. Wilson, against Thomas H. Bush, Isaac K. Palmer, Isaac R. Hitt, the city of Chicago, Thomas Fast and Lucy Bush.

It was alleged that on the 28th of January, 1836, John L. Wilson furnished Isaac K. Palmer the money wherewith to purchase from the government of the United States, for said Wilson, the east half of the south-east quarter of section 34, town 38 north, range 14, east of the third principal meridian; that Palmer purchased the land, took a receipt from the receiver of the United States land office therefor, and on the same day assigned the same to Wilson, intending thereby to transfer the land to him; that on the 2d day of February, 1836, Wilson sold the land to Charles Petit, and transferred to him the receiver's receipt so assigned. It is then alleged, upon information and belief, that the receiver's receipt was lost or destroyed after its delivery to Petit, and that it was never returned to the United States land office; that the patent for the land was therefore issued by the government of the United States to Isaac K. Palmer on the 1st of October, 1839, but it remained in the land office until April, 1874, when it was delivered to Isaac R. Hitt, as agent for Averill & Armstrong; that Wilson gave Petit a warranty deed for the land, the consideration being $250, and Petit's title has become vested in the city of Chicago, Isaac R. Hitt, or both of them; that about forty years after the purchase of the land from the government, Palmer discovered that the patent had been issued in his name, and on or about April 5, 1875, he made an agreement with Bush, whereby Bush was to take all necessary steps to establish the title in Palmer, and get possession of the land, and Bush was to have one-half of the land. Palmer, at the same time, quitclaimed to Bush. It is then charged that Bush purchased with full knowledge of the facts; that on July 17,

1875, Bush commenced an ejectment suit against Hitt and the city of Chicago, and recovered a verdict, and at the time the bill was filed there was pending a motion for a new trial; that on the trial of the ejectment suit the defendant had offered to prove the facts set forth above, but such evidence was excluded from the jury as not constituting a legal defence; that if judgment shall be recovered on said verdict, complainant will become liable to the extent of $250, and interest, on his covenant of warranty in the deed to Petit, and that the defendants Thomas Fast and Lucy Bush are claiming some interest in the land. The prayer is, that the ejectment suit may be enjoined, and Bush and Palmer decreed to convey, in trust, to Wilson, for his grantees.

The bill was amended on the 20th of March, 1878, by making John C. Palmer, R. J. O. Hunter and E. M. Hill defendants.

Hill, the Bushes and the Palmers filed an answer, to which the complainants filed a replication on the 13th of April, 1878. At the January term, 1881, of the court, the answer was amended, setting up that Wilson was discharged from liability on his covenants by virtue of proceedings under the Bankrupt law of 1841.

A supplemental bill was filed on the 22d of May, 1882, alleging that since the filing of the original bill,—namely, on the 29th of January, 1881,—the title which had been vested in Hitt had passed by conveyances, particularly specified, to James R. Stanley. Stanley answered on the same day, admitting, substantially, the allegations of the bill, and on the same day the city of Chicago and said Stanley filed their cross-bill in the case, repeating, in substance, the allegations of the original bill in respect to the purchase of the land by Palmer for Wilson, and averring that Palmer either quitclaimed to Wilson or assigned the certificate of purchase; "that complainants are unable to state, from all the information which they can obtain, whether said land was conveyed by Palmer to Wilson by quitclaim deed, or whether said certificate was assigned, but,

from all the facts they are able to learn, they aver and allege that said certificate was assigned." They allege that the certificate of purchase was lost or destroyed, but they did not know how; that Wilson gave Petit a general warranty deed, among the covenants wherein was one covenanting to warrant and defend the title and the quiet and peaceable possession of the property, etc., and that by *mesne* conveyances, "all the title which Wilson or Petit had in and to said land has become and now is vested in the city of Chicago and James R. Stanley, and that Wilson's covenants, which run with the land, are vested in the city of Chicago and James R. Stanley, and that by *mesne* conveyances from Petit, complainants will have a right of action against Wilson on the covenants in the deed from him to Petit, in case Bush should recover in the ejectment suit. Process was prayed against the Bushes, the Palmers, Wilson, Hitt, Fast, Hunter, Hill, McPherson and Charles B. Lawrence, and the prayer is that the ejectment suit be enjoined, and that the defendants be decreed to convey to Stanley, to be by him held subject to the mortgage in favor of the city. Answers were filed to the cross-bill.

On the 12th of June, 1882, the court made this order:

"This cause coming on to be heard upon the bill, answer, replication and proofs, and it being admitted by the parties hereto that said John L. Wilson was discharged as a bankrupt in the year 1841, under the Bankrupt law then in force, the court finds that he has no interest in the premises in controversy upon which to sustain the bill herein, and on motion of said complainant, leave is given to him to amend said bill by the addition of a new party complainant, and also, on motion of the city of Chicago, one of the defendants herein, said city is given leave to file a cross-bill herein, with James R. Stanley as co-complainant in said cross-bill; and said city moves for a continuance of the injunction heretofore granted herein, which motion is granted by the court, upon condition that said Stanley, by the 30th of June, A. D. 1882, file a new in-

junction bond herein, in the penal sum of $1000, with surety to be approved by the clerk of this court, conditioned as required by statute, for the payment of damages, and also expressly conditioned for the payment of the rents upon said property from the time of filing the cross-bill.

"It is further ordered, that this order be entered as of the January term, A. D. 1882, of this court.

"It is further ordered, by consent of parties, that the depositions and evidence heretofore taken or heard in this case, or in the former case of *Hitt* v. *Bush,* (chancery,) or *Bush* v. *Isaac R. Hitt and the City of Chicago,* so far as such testimony is competent evidence, may be read on the hearing of this cause, and the further hearing of said cause is continued."

Charles B. Lawrence died testate, and his sole devisee and executrix was made a party in his stead.

On the 30th of July, 1886, final decree was entered, finding that the averments in the original and cross-bills were true; that Palmer, as agent for Wilson, and with his money, entered and purchased the land in controversy from the United States, and assigned the certificate of entry to Wilson, and thereby directed the patent to be issued to Wilson, but that said certificate was lost or destroyed, so that the patent was made out to Palmer, and conveyed to him the legal title, which he holds in trust for Wilson and his grantees; that Stanley is entitled to have the legal title, subject to the mortgage in favor of the city, and it is directed that conveyance be made accordingly. It is also recited and decreed as follows:

"And it appearing to the court that certain of said defendants have paid for the redemption of said premises from a sale for certain assessments upon said premises, to-wit, that Thomas H. Bush has paid the sum of $268.83, and John C. Palmer has paid the sum of $1330.73, and the said Margaret Lawrence has paid the sum of $472.51, and the said Susan M. McPherson has paid the sum of $630.03, which payments were made on the 30th day of August, 1884, therefore it is

further ordered, that upon the payment of the costs of this suit, as heretofore ordered, and the delivery, by said Thomas H. Bush, John C. Palmer, Margaret Lawrence and Susan M. McPherson, to the clerk of this court, of their deed or deeds of conveyance, as hereinbefore ordered, and notice thereof to the said James R. Stanley, or his solicitor, Harvey B. Hurd, that the said Stanley pay into the hands of the clerk of this court, within ten days after such notice, the amounts of the said secured sums, with interest thereon from August 30, 1884, at the rate of six per cent per annum, for the benefit of said defendants, the same to be paid to them by said clerk, on the performance, on their part, of so much of this decree as pertains to them, respectively, and in default of such payment the said defendants have execution therefor against said James R. Stanley."

The errors assigned are:

*First*—The Superior Court of Cook county erred in rendering the decree aforesaid, in manner and form aforesaid, both as to the original and cross-bills.

*Second*—In not rendering a decree dismissing said bill and cross-bill, and each of them, for want of equity.

*Third*—In rendering said decree in manner and form aforesaid, without determining who held title paramount to that of appellants.

*Fourth*—In admitting improper, incompetent and irrelevant evidence on behalf of complainants in the original bill, and likewise in the cross-bill, and each of them.

*Fifth*—In refusing to hear evidence which was offered by defendants in the original and cross-bills, and appellants herein, which was proper, competent and relevant to the issues.

Appellees assign the following cross-error: "The Superior Court erred in receiving certificates of redemption from pretended tax or assessment sales, and requiring money to be paid to appellants, respectively, for redemption from such pretended sales."

Messrs. COOK & LAWRENCE, and Messrs. JUDD, RITCHIE, ESHER & JUDD, for the appellants:

The evidence is not sufficient to establish a resulting trust. Although the payment of the money may be shown by parol, yet it must be plainly proved by direct and unequivocal evidence. Browne on Statute of Frauds, sec. 91; *Dorsey* v. *Clarke,* 4 H. & J. 557; *Sewell* v. *Baxter,* 2 Md. Ch. 457; *Faringen* v. *Ramsey,* 2 id. 375; *Holida* v. *Shoop,* 4 Md. 474; *Baker* v. *Vining,* 30 Me. 126; *Boyd* v. *McLean,* 1 Johns. Ch. 590; *Enos* v. *Hunter,* 4 Gilm. 219; Bigelow on Fraud, 489; *Cutter* v. *Tuttle,* 19 N. J. Eq. 560; *Malin* v. *Malin,* 1 Wend. 648; *Hencke* v. *Floring,* 114 Ill. 558; *Clement* v. *Clement,* 1 Jones' Eq. 185; *Lench* v. *Lench,* 10 Ves. 517; *Kendall* v. *Mann,* 11 Ala. 18; *Mahoney* v. *Mahoney,* 65 Ill. 406.

Evidence as to the admissions of the alleged trustee, is viewed with the greatest suspicion, and is seldom accorded much weight. *Gascoigney* v. *Thwing,* 1 Vern. 367; *Lench* v. *Lench,* 10 Ves. 517; *Clement* v. *Clement,* 1 Jones' Eq. 585; *Grover* v. *Grover,* 3 Y. & J. 170; *Johnson* v. *Filson,* 118 Ill. 219.

The evidence of Jones, Hitt, Wilson and Porter should have been excluded on the hearing of the cross-bill. Stanley not being a party when they were taken, they could not be used against or for him. 1 Daniell's Ch. Pr. *868, 869; Freeman on Judgments, sec. 162; 2 Phillips on Evidence, *9; *Akins* v. *Humphrey,* 1 M. & R. 523; Weeks on Depositions, sec. 476.

That portion of Hitt's testimony as to the contents of the deeds, etc., in the chain of title, was still further objectionable. He was not a maker of abstracts. His memoranda were not made from the original deeds, but from the records. *King* v. *Worthington,* 73 Ill. 161; *Compton* v. *Randolph,* 104 id. 555.

If Palmer either assigned the certificate of entry, or deeded this land to Wilson, then there is not the slightest need here for the interposition of a court of equity. Starr & Curtis' Stat. 1082, sec. 20; *French* v. *Spencer,* 21 How. 236; *Cavender*

v. *Smith*, 3 G. Greene, 350 ; 5 Iowa, 188 ; *Magruder* v. *Esmay*, 35 Ohio St. 221 ; *Simmons* v. *Waggoner*, 101 U. S. 260 ; *Rogers* v. *Brent*, 5 Gilm. 573 ; *McConnell* v. *Wilcox*, 1 Scam. 367.

Mr. H. B. HURD, for the appellee Stanley :

As to the question of *laches,* see Angell on Limitations, sec. 390 ; *Owens* v. *Crow*, 62 Md. 491 ; *Dow* v. *Jewett*, 18 N. H. 340 ; Perry on Trusts, sec. 141.

Under the stipulation the depositions of Jones, Hitt, Wilson and Porter were properly admitted.

It was competent, at common law, to prove the contents of the destroyed records, by oral testimony. 1 Greenleaf on Evidence, sec. 509.

The assignment of a receiver's certificate was not a conveyance of the land. *Welch* v. *Dutton*, 79 Ill. 465.

Messrs. BARNUM, RUBENS & AMES, and Mr. EDWARD ROBY, for the city of Chicago :

Until the patent issues, the legal title remains in the United States. *Irvine* v. *Marshall*, 20 How. 566 ; *Wilcox* v. *Jackson*, 13 Pet. 498.

As to jurisdiction of a court of equity, see *Patterson* v. *Winn*, 11 Wheat. 383 ; *Doswell* v. *De La Lanza*, 20 How. 33 ; *Bagnel* v. *Broderick*, 13 Pet. 450.

A bankrupt may ratify the original contract, and revive it and keep it in force, notwithstanding his discharge. *Underwood* v. *Eastman*, 18 N. H. 582 ; *Fleming* v. *Hayne*, 1 Starkie N. P. 296 ; *Brix* v. *Braham*, 1 Bing. 281 ; *Alsop* v. *Brown*, 1 Doug. 192.

Wilson, by filing the original bill, acknowledged his liability on his covenants of warranty, and waived his privilege. The privilege is personal, and can not be invoked by a third person.

The depositions were properly admitted in evidence, being properly taken. The certificates of redemption were not competent evidence, no foundation having been laid for them.

*Per* CURIAM: In order to determine what evidence is properly before us for consideration, it is necessary that we first pass upon the errors assigned in regard to the rulings upon evidence.

*First*—It is contended the court erred in admitting in evidence the depositions of Jones, Hitt, Wilson and Porter, on the hearing of the cross-bill. This, in our opinion, admits of two answers:

1. There was no decree dismissing the original bill, and the final decree recites that the cause came on for trial "upon an amended bill and supplemental bill of the said John L. Wilson," and the pleadings responsive thereto, and on the cross-bill of the city of Chicago, etc. The court, in the previous order, made on the 12th of June, 1882, it is true, recited that it found that because Wilson was discharged as a bankrupt in the year 1841, under the Bankrupt law then in force, "he had no interest in the premises in controversy upon which to sustain the bill herein;" but it was only decreed, as a result of that finding, that leave be given to amend the bill by the addition of a new party complainant, and also that leave be given to the city of Chicago and Stanley to file cross-bill, etc., and so the original bill, as amended, was still before the court. It is obvious that if the court was mistaken as to the effect of the discharge in bankruptcy upon Wilson's standing in the case, and if, notwithstanding such discharge, he retained such an interest in the property in controversy as enabled him to maintain the original bill, it is unimportant whether these depositions were properly admissible to prove the allegations of the cross-bill, since the decree, so far as affects the interests of these appellants, must be the same, whether it shall be considered as under the original bill or under the cross-bill. That the court was mistaken as to the effect of the discharge in bankruptcy upon Wilson's standing in the case, we think can admit of no doubt. We said in *Marshall* v. *Tracy*, 74 Ill. 379: "The doctrine best sustained by authority is, that the original

cause of action is not destroyed by the discharge in bankruptcy. The bar which the discharge interposes may be removed by an unconditional new promise, and debt revived upon the original consideration." And this was re-affirmed in *Classen* v. *Schoenemann et al.* 80 Ill. 304. The discharge is analogous, in effect, to the Statute of Limitations, in so far as it does not annul the original debt, but merely suspends the right of action for its recovery. (*F. and M.* v. *Flint,* 17 Vt. 508; 44 Am. Dec. 351.) It follows, necessarily, that the privilege is purely personal to the bankrupt, and if he does not choose to avail of it, no one else can do it for him. Wilson here had the undoubted right to treat the covenant as binding upon him, notwithstanding his discharge, and having done so, he has now the same interest in the property that he had when he made his covenant.

2. The record recites that "it is further ordered, by consent of parties, that the depositions and evidence heretofore taken or heard in this case, or in the former case of *Hitt* v. *Bush,* (chancery,) or *Bush* v. *Isaac R. Hitt and the City of Chicago,* so far as such testimony is competent evidence, may be read on the hearing of this cause." The parties were then all before the court, Charles B. Lawrence being one of the solicitors, and no reason is pointed out why they might not agree as to what should be read in evidence. This agreement plainly waives all objections to the time and mode of taking these depositions, and that includes the objection now urged.

*Second*—It is next contended that the court erred in admitting in evidence certain portions of the testimony of Hitt and Jones, as to the contents of deeds, etc., in the chain of title, because the memoranda which were testified to by them were not made as abstracts of title. The objection can not, in our opinion, be sustained. It is provided by section 28, chapter 116, of the Revised Statutes of 1874, that in cases like the present, where it is shown, as it here was, orally, in court, "that the original of any deeds, conveyances, or other written record evidence, has been lost or destroyed, or not in the power

of the party wishing to use it on the trial to produce the same, and the record thereof has been destroyed by fire, or otherwise, the court shall receive all such evidence as may have a bearing on the case, to establish the execution or contents of the deeds, conveyances, records or other written evidence so lost or destroyed." The recollection of witnesses as to the contents of such lost or destroyed instruments would clearly be competent under this section, and we perceive no reason why their recollection might not be refreshed by reference to notes taken by the witnesses, and known to be correct. (Greenleaf on Evidence, sec. 436.) The memoranda of the witnesses were not read in evidence on their direct examination, but, as we understand the record, the witnesses simply refreshed their memories by referring to them, and then testified to what they recollected. The memoranda of Jones were, on his cross-examination, given in evidence at the instance of one of the counsel for the appellants, but for that error, of course, appellants can not complain.

*Third*—This brings us to the vital question in the case,—does the evidence establish a resulting trust? Wilson testified that he procured Isaac K. Palmer to enter this land for him; that he gave Palmer $100 wherewith to enter the land; that Palmer entered it, and afterwards transferred it to him by assigning the certificate of purchase or making him a quitclaim deed,—he is not certain which. He adds: "I got Palmer to enter it, because I wanted to show that I paid him more than $100 for it, because you could go and enter up all the land around there you were a mind to, at that time, for $1.25. I recollect giving him the $100 to go and enter that particular piece of land with, just as well as if it had been an hour ago." This evidence is nowhere disproved. Palmer, when first applied to, denied that he ever owned the land, and then offered to quitclaim to Wilson upon being assured of his identity, but after being interviewed by Bush he seems to have argued himself into the belief that the land must have been entered for him by a partner named George; but he distinctly states that

27—122 Ill.

he has no recollection at all of the entry. He argues, simply, that this or that must have been so because of other facts. stated by him, but does not state a single fact in regard to the entry as of his own knowledge. Such testimony is insufficient to prove anything. Wilson is corroborated by these circumstances. The land was entered on the 28th day of January, 1836, and on the 2d day of February, of the same year, he sold and conveyed it to Charles Petit. Palmer never made any claim to the land for a period of forty years, lacking only a few months, and then only after his attention was called to it by other parties. He gives, as an excuse, that he became insolvent about 1837-8, and left Chicago in 1841, and always supposed that all the land he had in Cook county had been. sold. But that did not affect his recollection of the property he did unquestionably own in Cook county. He describes that property from memory, and shows how he acquired it, but he has no recollection at all of this land. In showing how he acquired other property, and what money he had, he always. shows, inferentially, that he could not have had the money wherewith to purchase this land.

We do not think it needful to discuss the evidence on this. question further, but deem it sufficient to say that it has all been carefully examined and considered, and we are of the opinion that it clearly sufficiently establishes a resulting trust..

*Fourth*—But counsel interpose the *laches* of Wilson, and, those claiming in right of him, as a bar to relief. But appellants have not been, nor has any one under whom they claim ever been, in possession of the land. The doctrine of *laches* can only be invoked by one in possession against one out of possession.

*Fifth*—It is objected that if it be true that Palmer either assigned the certificate of entry or deeded this land to Wilson, then there is not the slightest need for the interposition of a court of equity. While it is true that section 20, of chapter 51, of the Revised Statutes of 1874, makes the official certifi-

cate of any register or receiver of any land office of the United States evidence of certain things, the 21st section of the same chapter provides that "a patent for land shall be deemed and considered a better legal and paramount title in the patentee, his heirs or assigns, than the official certificate of any register of a land office of the United States, of the entry or purchase of the same land."

*Sixth*—It is objected that the decree does not establish title either in Stanley or the city of Chicago. The decree finds that Stanley owns the land, subject to the mortgage of the city. We fail to perceive how appellants have any interest in the question of priority between these parties.

*Seventh*—The cross-error raises the question of the admissibility of the certificates of deposit for redemption. We think they were properly admitted in evidence. It is provided by section 197, chapter 120, of the Revised Statutes of 1874, that "when any tract or lot shall be redeemed from tax sale, the clerk shall enter the name of the person redeeming, the date, and the amount of the redemption, in the proper column. And section 120 of the same statute provides that the books and records belonging to the office of the county clerk, or copies thereof certified by said clerk, shall be deemed *prima facie* evidence to prove the sale of any land or lot or taxes or special assessments, the redemption of the same, or payment of taxes, or special assessments thereon." We think these certificates are, within the meaning of this section, "certified copies of the record of redemption."

On the whole, we find no cause to disturb the decree below, in any respect. It is therefore affirmed.

*Decree affirmed.*