(No. 18964.—)

THE CITY OF CHICAGO, Appellant, *vs.* ISAAC R. HITT *et al.* Appellees.

*Opinion filed April 20, 1929—Rehearing denied June 5, 1929.*

JAMES TODD, FRANK S. RIGHEIMER, and EDWARD R. JOHNSTON, for appellant.

620

SCOTT, BANCROFT, MARTIN & MacLEISH, (FRANK H. SCOTT, LESTER L. FALK, and CHARLES M. PRICE, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On August 6, 1890, the city of Chicago filed its petition in the circuit court of Cook county under the Burnt Records act against numerous defendants to establish its title, in trust for the use of the public schools, in certain land on Cottage Grove avenue between Eighty-third and Eighty-seventh streets, in Chicago. The claim of title in the original petition was based on a foreclosure by *scire facias* of a mortgage dated October 13, 1836, from Charles Pettit to Richard J. Hamilton, as school commissioner, to secure $1500, and a subsequent conveyance to the city in 1853. The South Park Commissioners, N. K. Fairbanks and Harvey B. Hurd filed answers, and the petition was dismissed as to all other defendants and was later dismissed as to Hurd. On October 27, 1896, the city filed an amended petition, in which it alleged that there were two mortgages executed on the land by Pettit to Hamilton, one dated August 19, 1836, for $3000, and the other dated October 13, 1836, for $1500, and that the petitioner was unable to state which of these mortgages was foreclosed under the *scire facias* but that the petitioner claimed title under the *scire facias* and by subsequent conveyance to the city. To the amended petition Fairbanks filed an answer, denying the title of the city and averring his ownership of the land subject to the mortgage of $1500, which remained unpaid and unreleased. Fairbanks died on March 27, 1903, and the trustees under his will were substituted as defendants and filed an amended supplemental answer. On December 13, 1920, the case was referred to a master to take the evidence and report his conclusions. On November 21, 1925, the master made his report, recommending that upon the payment by Fairbanks' trustees to the city of $1500,

with interest at ten per cent from October 13, 1836, (the date of the mortgage from Pettit to Hamilton,) a decree be entered finding the title in the trustees under the will of Fairbanks. Objections to the report were overruled and stood as exceptions in the circuit court and were again overruled and a decree was entered as recommended. From that decree an appeal has been prosecuted to this court by the city of Chicago.

On January 28, 1836, Isaac K. Palmer, as agent of John L. Wilson, and with Wilson's money, purchased the land from the United States and received a certificate of entry or receipt, which was assigned to Wilson, and directed the issuance of a patent to Wilson on presentation of the certificate. The certificate and its assignment were not delivered to the commissioner of the general land office but were lost or destroyed, and on October 1, 1839, the United States issued a patent to Palmer. In 1875 Palmer conveyed to Thomas H. Bush. No deed appears to Wilson from Palmer, but on February 2, 1836, Wilson executed a deed to Charles Pettit. On August 19, 1836, Pettit executed a mortgage to Hamilton to secure $3000. On the margin of the record where this mortgage was recorded it was released by Hamilton. On October 13, 1836, Pettit executed another mortgage to Hamilton, as school commissioner and agent for the inhabitants of Cook county, to secure $1500, and on the same day Pettit executed another mortgage to Hamilton, as school commissioner, for $500, on certain lands in LaSalle county which are not in controversy. On May 19, 1837, Pettit conveyed to Henry Moore, subject to a certain mortgage or mortgages to the commissioner of school lands, to secure $2000. On October 31, 1837, a writ of *scire facias* was sued out of the municipal court of Chicago by Hamilton, as school commissioner, against Pettit, which writ described the mortgage of August 19, 1836, which on the face of the record had been released. From the abstracter's memoranda of the papers

on file and the amount of the judgment of $1677, this *scire facias* was apparently intended to be upon the mortgage for $1500, dated October 13, 1836. Moore, who held the record title at the time this writ was issued, was not a party to that proceeding. The writ was not delivered to the sheriff and was not served upon Pettit. On November 8, 1837, Pettit appointed James Grant as his attorney to enter his appearance in a *scire facias* proceeding to foreclose a mortgage at the suit of Hamilton, to confess judgment for the amount due on the mortgage, to waive service of process and to do all things necessary in the premises. On November 13, 1837, a judgment was entered, which recited that Pettit, by his power of attorney to Grant, admitted that he could not deny the action of the plaintiff, and that the plaintiff recover from the defendant $1677 and costs. On January 12, 1839, a special execution was issued on the judgment, but it was not delivered to the sheriff. On January 27, 1839, another special execution was issued and was returned by the sheriff on September 12, 1839, by order of the plaintiff. On January 24, 1844, a special execution was issued and levied upon the premises, and on February 27, 1844, the sheriff sold all the right, title and interest of Pettit to William H. Brown, school agent. On December 11, 1846, the sheriff issued a deed to Brown as school agent. On February 12, 1853, Brown conveyed to the city of Chicago in trust for the public schools.

On November 8, 1842, Henry Moore, the grantee of Pettit, was adjudged a bankrupt by the United States district court of Massachusetts and Moses Pritchard was appointed as his assignee. On April 23, 1843, Pritchard, as assignee, sold all of the interest of Henry Moore to Reuben Moore, but apparently no deed was issued at that time by the assignee to the purchaser. Appellant contends that the report of the assignee shows that Henry Moore was the purchaser at this sale, but the subsequent deed of the assignee recited that Reuben Moore was the purchaser.

Reuben Moore died leaving a will, in which he devised all of his property to his widow, Anna M. Moore, who on May 18, 1857, conveyed to James Averill and Thomas Armstrong. On May 22, 1857, Pritchard, as assignee of Henry Moore, executed a deed to Averill and Armstrong, and by *mesne* conveyances from Averill, Armstrong, Isaac R. Hitt, James R. Stanley and other parties the title finally vested in Fairbanks on April 5, 1890, and the trustees of Fairbanks claim the equitable title through these various conveyances. In 1875 Palmer conveyed to Bush, and appellees claimed the legal title under the patent to Palmer and *mesne* conveyance from Palmer and his successors in interest, including Bush.

The evidence shows that the land has been in the possession of appellees and the persons from whom they claim title and that the city of Chicago has never been in undisputed possession; that Isaac R. Hitt found the premises occupied in 1865 and 1866, and when he again visited them in 1868 and 1869 as the agent of Averill and Armstrong, who then claimed to own the land, Hitt made arrangements with the tenants to remain on the land and pay the taxes in lieu of rent and to keep up the improvements, and this oral agreement continued until 1874. In 1874 Hitt was the owner and leased the premises to certain parties who resided upon and farmed them. In that year a survey was made of the land and a fence was built around it. Tenants occupied the land from that date until the commencement of this suit. In 1919 the city, under protection of its police department and against the protest of Fairbanks, attempted to erect certain portable school buildings on the premises, and Fairbanks filed a petition in this case for an injunction to restrain the city from taking possession. The hearing on the injunction was continued until the final hearing in this case, and in the final decree a permanent injunction was granted. The pleadings and documentary evidence showing the chain of title, and the proceedings affecting

the same, are of considerable length, and the entire record prior to 1871 was destroyed in the Chicago fire.

The decree found the legal and equitable title in the trustees of Fairbanks under the chain of title above recited. It found that the mortgage of August 19, 1836, from Pettit to Hamilton, to secure $3000, was satisfied of record by Hamilton prior to May 19, 1837; that the mortgage of October 13, 1836, from Pettit to Hamilton was not involved in the *scire facias* proceeding of 1837 brought by Hamilton in the municipal court of Chicago and that the court never acquired jurisdiction in that proceeding; that the judgment rendered therein and the sale under the special execution were void and the city did not have a valid claim of title through or under such sale; that the mortgage of October 13, 1836, for $1500 was and is a valid lien upon the premises; that the premises were never a part of school section 16, and the money loaned by Hamilton to Pettit was no part of the proceeds derived from the sale of lands in section 16; that Fairbanks and his grantors were in possession, by their respective tenants, for more than seven years prior to the filing of the original and amended petitions, and they had a connected title in law and in equity from the United States and from a person authorized to sell the premises under a decree of a court of record. The decree confirmed the equitable and legal title in fee in the trustees subject to the mortgage of October 13, 1836, for $1500, together with simple interest at ten per cent, it directed the city to remove the buildings, it enjoined the city from erecting further buildings and taxed the costs against the city.

It is insisted by appellant that the *scire facias* proceeding of 1837 to foreclose the mortgage imports verity and cannot be attacked collaterally because the court had jurisdiction of the subject matter and of the persons of the defendants. Appellees contend that in a proceeding to foreclose a mortgage by *scire facias* there is no presumption in

favor of the jurisdiction or judgment of a court of general jurisdiction and that an equitable interest in land cannot be sold in such a proceeding.

The title to this land was before this court in *Bush* v. *Stanley,* 122 Ill. 406. In that case a bill was filed in the superior court of Cook county to declare a resulting trust in the land, to compel the conveyance of the legal title, and to enjoin the prosecution of an action of ejectment by Wilson against Palmer, Bush, Hitt, the city of Chicago and others. The original bill set out the title substantially as it appears in this case. It alleged that the title had become vested in the city of Chicago and Isaac R. Hitt, or both of them, and that in 1875 Bush began an action of ejectment against the city of Chicago and Hitt, secured a judgment in his favor, and that a motion for a new trial was still pending. The prayer was that the ejectment suit be enjoined and that Bush and Palmer be decreed to convey the title in trust to Wilson for his grantees. A supplemental bill was filed, which alleged that the title of Hitt had vested in James R. Stanley. The city of Chicago and Stanley filed a cross-bill, in which they claimed title to the land. The decree found that Palmer, as the agent of Wilson, and with his money, entered and purchased the land from the United States; that Palmer assigned the certificate of entry to Wilson and thereby directed the patent to be issued to Wilson, but that the certificate was lost or destroyed, so that the patent was issued to Palmer and conveyed to him the legal title, which he held in trust for Wilson and his grantees; that Stanley was the owner of the legal title subject to the mortgage of $1500 in favor of the city, and it was decreed that a conveyance be made accordingly. That decree was affirmed by this court on September 27, 1887, and it would be *res judicata* of the questions raised in this case except for the fact that there was a stipulation in that case that whatever decree might be rendered should not be considered as an adjudication between the city and Stanley.

It has repeatedly been held by the Supreme Court of the United States that a certificate of the land office does not convey the legal title of the land to the holder of the certificate but that it only evidences an equitable title, which may afterwards be perfected by the issuance of a patent, and until the patent is issued the legal title remains in the United States. (*Redfield* v. *Parks,* 132 U. S. 239; *Langdon* v. *Sherwood,* 124 id. 24; *Bagnell* v. *Broderick,* 38 id. 436.) In January, 1836, Palmer entered the land and the certificate was issued to him. A patent was not issued to him until October 1, 1839, which was after the *scire facias* proceeding. The legal title was in the United States until October 1, 1839. Palmer retained the legal title from 1839 until 1875, when he conveyed it to one of the grantors of Fairbanks. Palmer never made a conveyance to Wilson, but Wilson, without having the legal title, conveyed to Pettit. Pettit, without having the legal title, mortgaged to Hamilton and later sold to Moore. Neither Wilson, Pettit nor Moore ever had the legal title. This condition of the title is recognized in both the original and amended petitions of appellant, which alleged that Wilson became the equitable owner in fee simple.

A writ of *scire facias* is a common law writ, but it was not used under the common law to foreclose a mortgage. The first act in this State authorizing a foreclosure by *scire facias* was passed on March 22, 1819, and was repealed by the act of May 1, 1825, which was in effect at the time of the foreclosure in this case. (Laws of 1833, p. 376.) This statute provided the steps to be taken in the proceeding. The only necessary defendant was the mortgagor, and if he was dead, his heirs, executors or administrators could be made defendants. It is a proceeding at law and is governed by the practice in courts of law and is not governed by the rules in courts of equity. (*Chickering* v. *Failes,* 26 Ill. 507; *Tucker* v. *Conwell,* 67 id. 552.) It is an action *in rem.* (*Menard* v. *Marks,* 1 Scam. 25;

*State Bank* v. *Wilson,* 4 Gilm. 57; *Carpenter* v. *Mooers,* 26 Ill. 162; *Camp* v. *Small,* 44 id. 37; *Henderson* v. *Palmer,* 71 id. 579.) The statute of 1825 provided that if default be made in the payment of any sum of money secured by a mortgage on lands and tenements the mortgage might be foreclosed by *scire facias.* In *Lowry* v. *Wright,* 15 Ill. 95, it was held that a statute which authorized the lands and tenements of the debtor to be taken on execution, only subjected to levy and sale the lands and tenements to which the debtor had a legal title and did not authorize the sale of any equitable interest the debtor might have in the land. In *Tucker* v. *Conwell, supra,* it was held that a *scire facias* was a proceeding at common law and appertained in no respect to equitable jurisdiction; that a recovery in such a case was by judgment and not by decree, and was enforced by execution directed to the sheriff and not to the master in chancery. In *Cottingham* v. *Springer,* 88 Ill. 90, it was held that at common law a mere equitable right could not be seized and sold on an execution under a judgment at law; that law courts, in adjudicating and settling the rights of parties or in the use of their process, could not settle equities or subject such rights to sale or transfer, and that the law courts could only deal with and enforce legal rights, leaving it to courts of chancery to settle and control equitable rights. In 1845 a statute was passed in this State which made equitable interests in real estate subject to sale upon execution; but that statute was not in effect at the time of the sale in this case. Under these authorities the equitable interest in this real estate at the time it was sold was not subject to sale under the *scire facias* proceeding but only the legal title was subject to sale.

It is insisted that after the legal title became vested in Palmer it inured to the benefit of Wilson and his grantees. There might be merit in this contention if Palmer had conveyed to Wilson, but he made no such conveyance. Palmer

did not secure the legal title until 1839, and he retained it until 1875, when he conveyed it to the grantors of Fairbanks.

In 1837 the municipal court of Chicago was a court of general jurisdiction, but in the *scire facias* proceeding to foreclose this mortgage it was exercising special statutory powers, under which it could adjudicate only legal titles and not equitable interests. In determining the presumptions which may aid a judgment it is necessary to inquire into the character and jurisdiction of the court which rendered the judgment. The rule is that nothing is intended to be out of the jurisdiction of a court of general jurisdiction except that which specially appears to be out of its jurisdiction. (*Haywood* v. *Collins,* 60 Ill. 328.) A court of general jurisdiction may have a special statutory jurisdiction conferred upon it not exercised according to the course of common law and which does not belong to it as a court of general jurisdiction. Nothing is taken by intendment in favor of the jurisdiction of a court of limited jurisdiction, or of a court of general jurisdiction while exercising special or limited powers. In the latter case the record must show the facts which authorize the court to act, and a judgment rendered without jurisdiction may be treated as void everywhere. *Firebaugh* v. *Hall,* 63 Ill. 81; *Glos* v. *Woodard,* 202 id. 480; *Calkins* v. *Calkins,* 229 id. 68; *Rabbitt* v. *Weber & Co.* 297 id. 491.

In *Chicago and Northwestern· Railway Co.* v. *Galt,* 133 Ill. 657, an action of ejectment was brought by Galt against the railroad to recover certain property. The railroad claimed title through a condemnation proceeding, and the validity of that proceeding, and the judgment rendered therein, were collaterally attacked in that case. The railroad located its right of way on a public street, and for the purpose of furnishing the public with another street the railroad sought to condemn the land in question. No power was given the company to condemn land for a public street. A judgment regular on its face was entered in

the condemnation proceeding. It was held in the ejectment suit that the court in the condemnation case acted without jurisdiction and that its judgment was unauthorized and void; that the jurisdiction exercised in condemnation cases was of a special character and the proceedings were to be conducted according to the mode prescribed, and that after the court acquired jurisdiction, error might be committed which would render the proceeding void. It was held that proceedings to condemn are summary, and no presumptions are indulged in favor of the regularity and validity of a proceeding to deprive a citizen of his property without his consent.

In this case the *scire facias* proceeding was governed by statute. It was an action at law, and under its judgment only the legal title could be sold. The court did not have jurisdiction to enter a judgment affecting the legal rights of persons who were not parties to the suit. The judgment had no effect upon Pettit for the reason that he had parted with his title. It did not affect the title of Moore because he was not a defendant to the suit and held only the equitable interest. Under the *scire facias* proceeding the legal title was not sold and was not conveyed to the city of Chicago but under the chain of title both the legal title and the equitable title vested in appellees, and the city of Chicago only had a mortgage on the property.

The decree was correct, and it will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*