Wilson Brothers, Appellee, v. Thomas Haege (Charles A. Beers, Trustee in Bankruptcy), Appellant.

Gen. No. 8,295.

570

Opinion filed May 21, 1931.

J. J. NEIGER, for appellant.

CONNELLY, WELD, WALKER & SEARLE, for appellee; FRANKLIN P. SEARLE, of counsel.

PER CURIAM.

On April 22, 1925, Thomas Haege, a retail merchant of Rock Island, Illinois, made an assignment to the American Trust and Savings Bank of said city for the benefit of his creditors. Haege was thereafter adjudicated a bankrupt and on May 6, 1925, appellant was appointed his trustee in bankruptcy.

On April 23, 1925, appellee filed in the circuit court of Rock Island county a form of affidavit in replevin, signed by William F. Rettke, agent for appellee, describing a quantity of men's furnishings and apparel of the value of $1,500, and charging that the same were being wrongfully detained by Haege and said bank, etc. The jurat there is dated April 23, 1925, but is not signed and no seal is attached thereto. A writ of replevin was issued to the sheriff of said county, which was returned, showing that said goods had been replevined and delivered to appellee.

The appearances of Haege and of the American Trust and Savings Bank were filed by their attorneys. Thereafter on motion and affidavit of Charles A. Beers, trustee in bankruptcy of Haege, he was made a party defendant and filed pleas. The defendant bank and Haege also filed pleas. Demurrers filed by appellee to certain of said pleas were overruled, on September 29, 1926, and appellee was ruled to reply within ten days. On October 19, 1926, appellee was defaulted for failure to comply with said rule, and on motion of defendants the suit was dismissed at the costs of appellee and a writ of *retorno habendo* was ordered issued to appellant. Thereafter, on November 12, 1926, by stipulation, the judgment by default was set aside, the cause was reinstated and appellee replied to said pleas.

On November 2, 1927, the defendants moved to dismiss said cause for want of an affidavit. On hearing, the "unsworn affidavit" was presented, and the motion was denied. Said cause was tried and a verdict returned in favor of appellee. Judgment was rendered thereon from which judgment appellant prosecutes this appeal.

It is first contended that the court erred in denying the motion of appellant to dismiss said cause, it being contended that the filing of an affidavit as provided by statute is jurisdictional and cannot be waived.

Counsel for appellee insists that while the filing of an affidavit has been held to be jurisdictional, the courts, in using said term, did not refer to the jurisdiction of the subject matter, but to the jurisdiction of the particular cause then under consideration; that, while want of jurisdiction of the subject matter cannot be waived, want of jurisdiction in a particular case may be waived and, on the record in this case, has been waived.

More than two years had elapsed since the institution of said proceedings, and a year and five months since the general appearance of appellant, before the making of said motion to dismiss. During the interim, appellant had filed pleas to the merits, obtained a rule on appellee to reply thereto, procured a default against appellee for failure to comply with said rule, and thereafter stipulated that such default be set aside and that the cause be reinstated.

If objection to the sufficiency of an affidavit in replevin can be waived, it has been in this case.

In this connection, counsel insist that a replevin suit is a statutory proceeding and is to be strictly construed; that, under the provisions of said statute, the filing of an affidavit is necessary in order to inaugurate such proceeding; that an instrument purporting to be an affidavit, not sworn to, amounts in law to no affidavit

at all; that it therefore follows that the trial court at no time had jurisdiction of the subject matter of said litigation and this question can be raised at any time. In support of this contention, counsel cite *Daugherty v. Carnine*, 261 Ill. 366; *City of Chicago v. Hitt*, 334 Ill. 619, and *Brown v. VanKeuren*, 340 Ill. 118.

In each of the cases cited by counsel, the court had before it statutory proceedings not according to the course of the common law. In order for the court to obtain jurisdiction in that character of case, there must be a substantial compliance with the provisions of the statute.

"Where a court is exercising special statutory jurisdiction, the record must show upon its face that the case is one where the court has authority to act. . . . Jurisdiction in such cases is never presumed, and if it does not appear, the judgment will be void." *Brown v. VanKeuren, supra,* 122. To the same effect are *Daugherty v. Carnine, supra,* and *City of Chicago v. Hitt, supra.* In the latter case, the court at page 628 says:

"A court of general jurisdiction may have a special statutory jurisdiction conferred upon it not exercised according to the course of common law, and which does not belong to it as a court of general jurisdiction. Nothing is taken by intendment in favor of the jurisdiction of a court of limited jurisdiction, or of a court of general jurisdiction while exercising special or limited powers. In the latter case, the record must show the facts which authorize the court to act, and a judgment rendered without jurisdiction may be treated as void everywhere."

Prior to the enactment of the statute on replevin, the circuit courts of this State had jurisdiction in actions of replevin, as a part of their common law jurisdiction.

The question before the court, therefore, is, first, whether the filing of said unsworn instrument purport-

ing to be an affidavit, was sufficient to give the court jurisdiction of the particular case; second, if not sufficient, was the want of such jurisdiction of a character that could be waived?

An instrument, otherwise in proper form, not sworn to, is not sufficient to give the court jurisdiction in an action of replevin. *Kehoe v. Rounds,* 69 Ill. 351; *Stolberg v. Ohnmacht,* 50 Ill. 442; *Clow v. Gilbert,* 54 Ill. App. 134–141; *Evans v. Bouton,* 85 Ill. 579. Where, however, the defendant appears and pleads without raising objection to the affidavit or to the jurisdiction of the court, he is thereafter held to have waived such objection. *Frink v. Flanagan,* 1 Gilm. 35, 36, 37; *Center v. Gibney,* 71 Ill. 557; *Udell v. Slocum,* 56 Ill. App. 216–218. See also *Fisher v. Brown,* 111 Ill. App. 486–491.

In *Frink v. Flanagan, supra,* the court had before it the record in a replevin suit. The affidavit filed with the clerk did not comply with the requirements of the statute. The court, in discussing said affidavit, at page 38 says:

"Should the plaintiff have been allowed to have amended his affidavit, is a question to which we have been able to find no case, except *Cutler v. Rathbone,* 1 Hill, 206, which was a case, in all the features, precisely like this, except that it does not appear but that the motion to dismiss was made at the earliest appearance of the defendant. There the court held, under a statute similar to ours, that an affidavit like this was insufficient, but that it might be amended, and this without any statutory provision on the subject. As we think this rule will tend to promote justice and prevent delays, we are disposed to adopt it. . . . This rule also disposes of another question raised on the argument, and that is, that the motion to dismiss was made too late after the defendant had appeared and pleaded. As we hold that such an affidavit is not the foundation of the jurisdiction of the court, the appearance and

pleading was a waiver of the irregularity in issuing the writ without a sufficient affidavit.''

In *Center v. Gibney, supra,* the court had before it a forcible detainer proceeding. The affidavit filed in the justice court did not show that it had been sworn to. The court at page 558 says:

''It is urged by counsel for plaintiff in error that the case of *Stolberg v. Ohnmacht,* 50 Ill. 442, is decisive of the question raised in this. . . . In that case, no complaint in writing was filed, sworn to or otherwise, which fact distinguishes it from the case under consideration, and hence it cannot be regarded as an authority controlling this case. In this cause, before the summons issued, a complaint, in writing, was filed with the justice, which seems to be regular in all respects, except the jurat is omitted. The transcript of the justice, however, shows that it was sworn to. The defendant is in no position to take advantage of the omission of the justice to add the jurat. Had he desired to take advantage of the decision of the circuit court in overruling the motion to dismiss on account of the defect in the complaint, he should have excepted to the ruling of the court. This he failed to do, and he cannot now insist upon that as error. *Dickhut v. Durrell,* 11 Ill. 72; *Wright v. Wheeler,* 55 Ill. 528; *Snell v. Trustees,* 58 Ill. 290. The case then appears in this situation: The defendant appeared before the justice of the peace and went to trial without making any objection to the complaint. In the circuit court he again submitted to a trial without objection. The transcript of the justice shows the complaint was sworn to. Under these circumstances, although the filing of a complaint is jurisdictional, we think it but reasonable to hold that the defendant has waived the defect that existed to the complaint.''

In the cases cited by counsel for appellant the court had primarily before it the question of the necessity

of a proper affidavit, and not as to whether that requirement could be waived.

In *Stolberg v. Ohnmacht, supra,* relied on by counsel for appellant, the court at page 443 says:

"This was an action of forcible entry and detainer, in which the justice issued a summons without an affidavit filed. The defendant appeared and moved to dismiss the suit. The justice overruled the motion. . . . The affidavit is the foundation of the jurisdiction, and has been constantly so held in this court. The justice had no jurisdiction when he issued the summons, and could acquire none, for the purposes of that suit, by allowing an affidavit to be filed on the day of trial. . . . The justice had brought the defendant into court by summons, and he had appeared, but having brought him there, he had no jurisdiction to compel him to defend against a complaint for forcible entry and detainer, because no complaint had been made in any manner of which the justice could take cognizance, and the law requires it to be made at the beginning, as the jurisdictional foundation for the entire proceedings."

In *Kehoe v. Rounds, supra,* being another of the cases relied on by appellant, the court had before it a replevin proceeding. At page 353 the court says:

"There was, in fact, no affidavit in replevin, and the writ was improvidently issued. What purports to be one was never sworn to, and is really no affidavit in the cause."

In that case, there was no appearance by the defendants, so there was no waiver of any defects in the jurisdiction of the court in the particular case involved.

*Evans v. Bouton, supra,* cited by appellant, was a replevin proceeding instituted before a justice of the peace. No affidavit was filed, the defendant defaulted and the justice rendered judgment against him. On

appeal to the circuit court, a motion was made by the defendant to dismiss the proceeding for want of jurisdiction, and it was urged by the plaintiff that the motion came too late. At page 581 the court says:

"Since no law makes it the duty of a defendant to appear to a summons issued by a magistrate, his non-appearance should work him no prejudice; and if he makes a motion going to the jurisdiction, at the earliest moment, in the circuit court, he is in time, and is entitled to the benefit of his motion. . . . This court said, in *Center v. Gibney,* 71 Ill. 557, filing the complaint was jurisdictional, but the objection had been waived by the party. . . . The objection was made by the defendant at the first practicable moment, and he should have the benefit of it."

In none of the cases cited by counsel for appellant had the defendant entered his appearance or done anything to waive his right to question the jurisdiction of the court in the particular case. Inferentially, said cases hold that irregularities of the character here involved could be waived, and would be waived if not raised in apt time.

In *Taylor Coal Co. v. Industrial Commission,* 301 Ill. 381, the court at page 364, in discussing the matter of waiver, etc., says:

"The general rule as applied to courts is, that jurisdiction of the subject matter,—which means jurisdiction of the class of cases to which the particular case belongs, and not jurisdiction of a case within such a class,—cannot be waived. The method by which jurisdiction of a particular case within the general class of cases is obtained, and any defects or irregularities in respect thereto, may be waived, and are waived unless seasonable objection is made in accordance with the established practice. (*O'Brien v. People,* 216 Ill. 354; *Franklin Union v. People,* 220 Ill. 355.) Where a court has jurisdiction of the subject matter and may

take jurisdiction of a particular case, if certain conditions exist, and no objection is raised to the exercise of jurisdiction, . . . a party will be deemed to have waived the jurisdictional question." Citing *Burnap v. Wight,* 14 Ill. 303; *Stout v. Cook,* 41 Ill. 447; *Crawford v. Schmitz,* 139 Ill. 564; *Hauger v. Cage,* 168 Ill. 365; *Law v. Ware,* 238 Ill. 360; *Peterson v. Manhattan Life Ins. Co.,* 244 Ill. 329; *People v. Evans,* 262 Ill. 235.

Under the foregoing authorities, the court did not err in denying appellant's motion to dismiss said proceeding.

While other errors were assigned on the record, on the merits of the cause counsel for appellant argues three propositions:

First, that the court erred in its rulings on the instructions.

Second, that remarks were made by the court during the trial of so prejudicial a character as to constitute reversible error.

Third, that appellee "had no right to rescind and bring replevin for goods purchased on account, and mostly paid for."

On the first proposition, it is contended that the court erred in giving the first, fifth and seventh instructions given on behalf of appellee, and in refusing the twentieth and twenty-second instructions tendered by appellant.

Appellee's first instruction sets forth that "the burden of proof is upon the plaintiff, and it is for it to prove its case by a preponderance of the evidence. Still, if the jury find that the evidence bearing upon the plaintiff's case preponderates in its favor, although but slightly, it would be sufficient for the jury to find the issues in its favor."

Counsel for appellant, in this connection, cites *Molloy v. Rapid Transit Co.,* 335 Ill. 164; *Bunch v. Abbott,* 256 Ill. App. 33. While the court, in *Molloy v. Chicago*

*Rapid Transit Co.*, held the giving of said instruction to be erroneous, there were other errors which were also held to be of a reversible nature. In *Bunch v. Abbott*, the record contained other errors, which the court held were highly prejudicial to the rights of the appellant. No case has been cited, and we know of none where the court has reversed a judgment alone for the giving of an instruction of this character.

Appellee's ninth instruction stated that " 'the preponderance of the evidence,' as used in the court's instructions, means the same as the words 'greater weight of evidence.' " Appellant's eleventh instruction states that "the burden of proof in this case is not on the defendants to disprove the plaintiff's case, but such burden is on the plaintiff to prove its case by a preponderance of all the evidence in the case, and if you believe from all the evidence in the case that the plaintiff has failed to make such proof, or that the evidence is evenly balanced, then your verdict must be for the defendants." The instructions are to be taken as a series. So considered, there was no reversible error in giving of appellee's first instruction. *Taylor v. Alton & Eastern R. Co.*, 258 Ill. App. 293–301.

The principal ground relied on to support the action of replevin was that Haege, on February 10, 1924, rendered an inventory or financial statement to appellee, and on the strength of that statement the goods in question and others were sold by appellee to Haege; that said financial statement was false, and misrepresented Haege's financial condition; that, among other things, there were over $11,000 worth of notes held by the People's National Bank of Rock Island, signed by Haege, which were not contained in said statement; that some $7,000 of indebtedness was owing to the G. B. Tailoring Company of Chicago, which was also not contained in said statement or inventory.

The evidence on the part of appellee tends to show that on the strength of said statement, credit was extended and goods shipped to Haege; that said statement was false; that while it showed a total indebtedness of only $11,200, his indebtedness was in fact something over $27,000; that, on April 22, 1925, after the making of said statement, the assignment above referred to was made by Haege and he was thereafter adjudicated a bankrupt.

The only excuse offered by Haege for his failure to include said notes in said statement is set forth in his testimony, as follows: "In the early part of the year 1923 I had a conversation with J. L. Vernon (president of said bank) at People's National Bank regarding the disposition of the department stores in the City of Rock Island. It was early in March. Just Mr. Vernon and myself were present. I asked Mr. Vernon why they didn't dispose of their stores. It was hurting the town and they weren't doing anything, and he said, 'Tom, I would like to have you figure out some way whereby we could get rid of them, and I would be too glad to pay you well for it.' I told him I would think it over and see him the next day. The next day I saw him again in the bank and just he and I were present. I told him at that time that there was only one way, and that was to reincorporate and have a buying power. That is, to have some incorporation to buy out the old holdings. So then is when we started. . . . I had a conversation with Mr. Vernon about my compensation for this work in my store, 1823 Second Avenue, in the forepart of July, 1923. Mr. Vernon and I were present. I told him that it was costing too much, that I was losing too much money staying away from the store, that I would have to quit it and take care of my own business. He said 'Don't quit now. I will make it,' or 'I will pay you more than you lose in the store.' Then I continued on. I sold the Young & McCombs Store. . . . After the trans-

action had been completed I had a talk with Mr. Vernon about it in the bank at the forepart of December. I went in and began to talk about the notes in the bank. I told him that I wanted to have them fixed up; that I had completed my job selling the store and wanted it fixed, and he said, 'Tom, don't worry now, they will all be taken care of.' In these conversations that I had with Mr. Vernon he told me that the stores owed the bank a lot of money; that he himself wouldn't get so much out of it, only in the lease.''

On cross-examination, he testified: "On February 10, 1924, the notes were in the bank, but I did not know it. I signed those notes. They aggregated about $11,000. I signed them at different times. . . . When the president went out of the bank and the new cashier went in, I gave renewal notes to the bank since February 10, 1924. . . . When Mr. Vernon left the bank, the bank called me in and I signed new notes. I knew I had to, because they hadn't been taken care of as he agreed.''

It was the theory of appellee that, in order to authorize a rescission of the sale of the goods shipped subsequent to said statement, it was only required to show that the statement was false and that appellee was prejudiced thereby. Appellant's theory in reference thereto is set forth in his refused instructions, No. 20 and No. 22, which are as follows:

"20. The Court further instructs the jury that the plaintiff cannot recover in this case unless it was entitled, prior to the institution of the suit in question, to rescind the sales made by the plaintiff to the defendant of the goods in question in this suit, and that to authorize the plaintiff to disaffirm and rescind the sale of said goods you must believe that the plaintiff has proven by preponderance of all the evidence the following three propositions, viz.:

"First. That at the time said goods were purchased the said Thomas Haege was insolvent or in failing circumstances.

"Second. That the said Thomas Haege must have had at the time he purchased said goods a preconceived intention not to pay for the said goods, or no reasonable expectation of being able to do so.

"Third. That there was intentional concealment of these facts or a fraudulent representation in reference to them by said Haege upon which the plaintiff relied, and unless you believe from a preponderance of all the evidence in the case that the plaintiff has proven all three of these propositions, then your verdict should be for the defendant."

"22. The court further instructs the jury that unless you believe at the time the said Thomas Haege bought the goods in question he had a preconceived intention not to pay for said goods, or no reasonable expectation of being able to do so, then your verdict should be for the defendants."

In *Reed & Co. v. Pinney & Co.*, 35 Ill. App. 610, the court at page 611 says:

"To entitle one to rescind a sale of goods that has been induced by false and fraudulent statements, the vendor is only required to show the statements made, that he relied upon them to his injury, and that they were false. The intent or motive with which such false representations were made need not be shown."

"It is fraud in law if a party makes representations which he knows to be false, and injury ensues, although the motives from which the representations proceeded may not have been bad." *Case v. Ayers*, 65 Ill. 142–144; *Reed & Co. v. Pinney & Co.*, supra, 611.

In *Case v. Ayers*, supra, the court at page 145 says:

"In *Stone v. Denny*, supra, it was laid down that fraud will be inferred when a party makes a representation which he knows to be false, or as to which he has no knowledge or information, and no grounds for

expressing his belief. . . . If the representations were false in the particulars named, the defendant must, from the very nature of the case, have known them to be false.''

The language there used is peculiarly applicable to the facts in this case.

In *Borders v. Kattleman,* 142 Ill. 96, the court at page 103 says:

''It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false, or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other.''

*Rowe v. Phillips,* 214 Ill. App. 582, cites and approves that language of the Supreme Court in *Borders v. Kattleman, supra,* above set forth.

In *Allen v. Hart,* 72 Ill. 104, the court at page 105 says:

''It is not indispensable to the right to rescind that the party guilty of making the misrepresentation knew it was false, or whether he was ignorant of the fact stated, provided it was material and the other party had a right to rely upon it, did so, and was deceived.''

Without setting out appellee's fifth and seventh instructions, it is only necessary to say that they correctly embody appellee's theory as above set forth, and under the authorities cited, the giving of said instructions was not erroneous. Neither did the court err in refusing appellant's instructions Nos. 20 and 22.

It is next contended that appellant was prejudiced by the remarks of the court during the trial of said cause. While there were numerous colloquies between court and counsel, and while the court and counsel for appellee may not have been as guarded in their remarks at all times as they should have been, there is

nothing in the record in this connection that could have seriously prejudiced appellant.

Lastly, it is contended that appellee had no right to rescind and bring replevin "for goods purchased on account, and mostly paid for."

At the time said financial statement was made, Haege owed appellee $3,994. From that date until approximately May 1, 1925, goods amounting in the aggregate to some $10,000 were shipped to Haege. Payments on account were made by Haege between February, 1924, and April 6, 1925, aggregating about $7,000. The invoice price of the goods replevined was $2,378.03. When Haege discontinued business, before the goods were replevined, he owed appellee $6,800.

The testimony on the part of the witnesses for appellee tends to show that the goods replevined had been shipped to Haege subsequent to the rendition of said financial statement, while the evidence on the part of appellant is to the effect that, as to certain of said goods, they had been purchased and shipped to him prior to said time. The court in numerous instructions informed the jury that appellee was not entitled to recover for any goods that had been purchased and paid for, nor any goods that had been sold prior to February 14, 1924. The evidence being conflicting, and the court having fully instructed the jury that appellee was not entitled to recover as to any goods shipped prior to February 14, 1924, we would not be warranted in reversing the judgment, as the weight of the evidence and the credibility of the witnesses was peculiarly for the jury.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*